Joseph W. COX, Sr., Individually and as Administrator of the Estate of Joseph W. Cox, Jr., Connie M. Cox and Keshia Elyce Patricia Cox, a minor, by Tammy Jo Deterline, her Guardian, Plaintiffs,

v.

DELAWARE ELECTRIC COOPERATIVE, INC., Defendant.

Civ. A. No. 91–281 MMS.

United States District Court, D. Delaware.

May 28, 1993.

Elwood T. Eveland, Jr. of Woloshin, Tenenbaum & Natalie, P.A., Wilmington, DE (Stewart L. Cohen, and Sandra M. Liberatori of Kessler and Cohen, Philadelphia, PA, of counsel), attorneys for plaintiffs.

Roger A. Akin of Sayer & Akin, P.A., Wilmington, DE, for defendant.

## *OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

Currently before the Court are plaintiffs' and defendant's motions *in limine*. For the reasons that follow, the Court holds: Delaware law will be applied to the remaining issues in this case; evidence of any negligence on the part of decedent's employer is not relevant to the issues of defendant's proportion of fault or the existence of an intervening-superseding cause and are therefore inadmissible; determination of whether plaintiff Joseph Cox, Sr., will be able to prove all the elements of his claim for negligent infliction of emotional distress must await trial; and the contract between decedent's employer and defendant will not be interpreted by the Court.

## I. FACTUAL BACKGROUND

According to the complaint, at approximately 2:00 p.m. on November 15, 1989, Joseph W. Cox, Jr., was electrocuted while working on a power line near Laurel, Delaware. D.I. 1 at ¶¶ 3–4. At the time of his

death, the decedent, a Pennsylvania resident, was employed by Blair Electric Service Company ["Blair"] of Bellwood, Pennsylvania. D.I. 1 at ¶ 3. His father, Joseph W. Cox, Sr., also employed by Blair Electric Co., watched his son die. D.I. 1 at ¶ 5.

Plaintiffs' complaint contains four counts. The first three counts are wrongful death actions asserted under Del.Code Ann., tit. 10, § 3724 (1992 Supp.). These counts are brought by the decedent's father, Joseph W. Cox, Sr., his mother, Connie M. Cox and his daughter, Keshia Elyce Patricia Cox. In the fourth count, Mr. Cox, Sr., asserts negligent infliction of emotional distress.

## II. CHOICE OF LAW

Plaintiffs have requested the Court to determine whether Pennsylvania or Delaware law will apply in the forthcoming trial. Plaintiffs argue for the application of Pennsylvania law and defendant for Delaware law. For the reasons which follow, Delaware law will be applied.[1]

### A. *Legal Principles*

■ To resolve a choice-of-law question in a case arising under diversity jurisdiction, this Court must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). In tort actions, Delaware, the state in which this Court sits, applies the "most significant relationship" test as articulated in the *Restatement (Second) of Conflicts*, §§ 6, 145, 146 (1971). *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41 (Del.1991).

Section 6 of the *Restatement (Second) of Conflicts of Law* recites the principles that apply generally to choice-of-law questions.

Section 6 lists "the factors relevant to the choice of the applicable rule of law" as:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectation,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result,

(g) ease in the determination and application of the law to be applied.

*Restatement (Second) of Conflicts*, § 6(2).

In addition to these seven factors, section 145 of the *Restatement* lists an additional four factors to be considered in tort actions:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(d) the place where the relationship, if any, between the parties is centered.

*Restatement (Second) of Conflicts*, § 145(2).

Finally, as the Delaware Supreme Court pointed out in *Travelers*, the Court should also consider additional provisions of the *Restatement* that are applicable to the particular issues before it. Of these provisions, section 146, which applies to personal injuries, and section 175, which applies to wrongful death actions, apply to plaintiffs' case.[2] These two provisions generally require the application of the law of the state where the

1. In a previous motion for summary judgment brought by defendant, this Court applied Pennsylvania law and determined that defendant was not a statutory employer under that law. Plaintiffs' argument that the application of Pennsylvania law on the summary judgment issue requires this Court to continue its application is belied by the plaintiffs' position at summary judgment. In their answering brief, plaintiffs stated, "the argument in this Brief is based upon the assumption that Pennsylvania law is controlling, *as to the issues before the Court on this Summary Judgment Motion.*" D.I. 23 at 5 (emphasis added).

Defendant did not contest that Pennsylvania law controlled the issue of whether defendant was a statutory employer. This Court made no finding as to which state's law properly applies to this action.

2. In *Travelers*, the Delaware Supreme Court specifically addressed section 146, but had no occasion to address section 175. Because this Court believes the Delaware Supreme Court would apply section 175 in the appropriate case, that section will also be applied.

injury occurred, unless another state "has a more significant relationship". The respective comments to these sections contain identical language which states,

> The likelihood that some state other than where the injury occurred is the state of the most significant relationship is greater in those relatively rare situations where, with respect to the particular issue, *the state of injury bears little relation to the occurrence and the parties.*

*Restatement (Second) Conflicts of Law,* § 146, comment c; § 175 comment d (emphasis added).

As the forgoing provisions make clear, factual and policy considerations inform the decision on which state's law should be applied.

### B. *Factual Considerations*

■ Application of the *Restatement* criteria to the facts of this case points toward a holding that Delaware law should govern the remaining issues of this case. First, the injury occurred in Delaware. *Restatement* § 145(a). Second, the conduct at issue, defendant's alleged negligence, occurred in Delaware. *Restatement* § 145(b). Third, the defendant is a Delaware corporation with its principal place of business in Delaware. *Restatement* § 145(c). Fourth, any "relationship" between plaintiffs and defendant arose out of the decedent's work which was done pursuant to a contract which called for work to be done in Delaware. *Restatement* § 145(d). The sole factor pointing to application of Pennsylvania law is the Pennsylvania residence of the plaintiffs. With the injury, conduct, residence of the defendant and relationship of the parties all pointing to Delaware law, Delaware has a far stronger relationship to the occurrence and the parties than does Pennsylvania. For this reason, the factual analysis required by section 145 indicates that application of Delaware law is required.

### C. *Policy Considerations*

The policy considerations of section 6 also mandate that Delaware law be applied. In their brief, plaintiffs argue that Pennsylvania law should be applied because three issues within the case implicate Pennsylvania's in-terest: (1) Pennsylvania's interest in its workman's compensation scheme, which will partially govern the distribution of any award; (2) a Pennsylvania policy which precludes admissibility of an employer's negligence when a worker's compensation award has been made; (3) the policy behind the common-law tort of negligent infliction of emotional distress in Pennsylvania.

### 1. Workmen's Compensation Act

With respect to Pennsylvania's worker's compensation scheme, plaintiffs correctly point out that any award in this case is subject to the lien of the worker's compensation carrier governed by Pennsylvania law. D.I. 45 at 6 citing Pa.Stat.Ann. tit. 77, § 671 (1992). While it is true that Pennsylvania law may govern the workman's compensation issue, that issue is between Mr. Cox, Sr., and the insurance carrier of decedent's employer, not between the plaintiffs and defendant. Any interest Pennsylvania may have in compensating employees, protecting employers, or employers' compensation carriers would be protected and in no way jeopardized by application of Delaware law at trial.

### 2. Admissibility of Evidence of Employer's Negligence

Plaintiffs next argue that Pennsylvania law should apply because Pennsylvania law would preclude admission of evidence of decedent's employer's (Blair's) negligence. *See Heckendorn v. Consolidated Rail Corp.,* 502 Pa. 101, 465 A.2d 609 (1983). The Court agrees such evidence would be inadmissible under Pennsylvania law. It does not follow, however, that Pennsylvania law is applicable to the issues in this case, as the Court finds such evidence would also be inadmissible under Delaware law for similar reasons. *See* pp. 245–48, *infra.*

### 3. Negligent Infliction of Emotional Distress

Both Pennsylvania and Delaware law recognize the tort of negligent infliction of emotional distress. However, Delaware law requires a plaintiff to have been in "the immediate area of physical danger" and to have

suffered "physical consequences." *Robb v. Pennsylvania R.R. Co.*, 210 A.2d 709, 714–15 (Del.1965). Pennsylvania law, on the other hand, only requires a plaintiff to have witnessed the event, and allows recovery for serious mental distress in the absence of physical consequences. *Sinn v. Burd*, 486 Pa. 146, 167, 172, 404 A.2d 672, 683, 686 (1979).

In adopting negligent infliction of emotional distress as a tort, the highest courts in both Delaware and Pennsylvania relied upon notions of redressing wrongs done. *Compare Robb*, 210 A.2d at 714 ("It is the duty of the courts to afford a remedy and redress for every substantial wrong.") *with Sinn*, 404 A.2d at 677 (" 'It is fundamental to our common law system that one may seek redress for every substantial wrong.' ") (quoting *Neiderman v. Brodsky*, 436 Pa. 401, 403, 261 A.2d 84, 85 (1970)). Stated simply, Delaware, by requiring a plaintiff suffer physical consequences and be within a "zone of danger," has not extended the tort as far as Pennsylvania, which allows recovery when plaintiff has only witnessed the event and shows only mental distress.

As the Pennsylvania Supreme Court explained in *Sinn*, there are five policy issues at stake when defining the contours of a tort: (1) medical science's ability to show causation; (2) potential for fraudulent claims; (3) fear of a litigation flood; (4) unduly burdensome liability; and (5) possibility of reasonably circumscribing the area of liability. *Sinn*, 404 A.2d at 678. The Delaware Supreme Court addressed these concerns in *Robb* when it adopted the zone of danger and physical consequences requirements. This Court can only conclude that by maintaining these requirements the Delaware Supreme Court did not intend the tort to be extended further. With such a limitation, that court necessarily protected two of the state's interests listed above: the potential of unduly burdensome liability and the inability to circumscribe the area of the tort. These policy interests are implicated by the limits placed upon the tort in *Robb*.

These policy interests work to protect defendants in tort actions. For this reason, they are directly at issue here due to the presence of a Delawarean defendant. Because the defendant is a Delaware corporation, and because the Delaware courts have limited liability under negligent infliction of emotional distress in a manner which protects defendants, the Court finds the interests of Delaware are directly at issue in this case.

**D. Conclusion**

Although Pennsylvania's interest in compensating Pennsylvanian plaintiffs is at issue in this case, this Court is unable to say that interest outweighs the significant relationship the facts have to the state of Delaware as well as the interest of Delaware in protecting a Delawarean defendant. Having decided Delaware law applies to the merits of this action, the Court now turns to other issues raised by the parties which will be resolved by applying Delaware law.

**III. ADMISSIBILITY OF NEGLIGENCE OF DECEDENT'S EMPLOYER**

Defendant wishes to admit at trial evidence that decedent's employer, Blair, was negligent in a manner that wholly or partially caused decedent's death. Plaintiffs object to admission of any such evidence on the grounds of relevancy. The Court finds, under the circumstances of this case, such evidence is not relevant, and therefore is not admissible.

**A. Admissibility to Establish Relative Proportions of Fault**

Defendant wishes to admit into evidence before the jury evidence decedent's employer, Blair, failed to train and/or supervise decedent adequately and that such failure constituted negligence which proximately contributed to decedent's death. Defendant concedes that because Blair was decedent's employer, the worker's compensation matrix prohibits any assessment of damages against Blair, regardless of Blair's fault. Nonetheless, defendant urges the jury is not "barred from assessing that evidence in determining the relative degrees of fault of the parties who *have* been joined." D.I. 46 at 9 (emphasis in original). By this defendant means that it seeks to reduce the percentage of

fault attributable to it by showing Blair was responsible for a certain portion of fault. Such a showing is not permissible.

The resolution of this question involves the interaction of two concepts. The first is an employer's immunity from liability resulting from the Pennsylvania Workmen's Compensation scheme.[3] The second is the concept of apportionment of damages among defendants as codified in Delaware's Uniform Contribution Among Tort–Feasors Law. Del.Code Ann. tit. 10 §§ 6301–6308 (1974).[4] Defendant asserts Blair's negligence is relevant, because without "all the facts" the jury will not be able to properly assess the true percentage of fault attributable to defendant. In essence, defendant seeks to reduce the amount of damages it must pay if found liable so that it will correspond to defendant's pro rata share of fault.

The general rule of common law, and that operable in Delaware prior to 1949, is that where two or more individuals jointly or independently negligently cause harm to a plaintiff, one putative defendant is not entitled to contribution from the other. *Distefano v. Lamborn*, 81 A.2d 675, 677 (Del.Super.Ct.1951). The ability of a defendant to reduce its liability for damages vis-a-vis a third party arises by reason of statutory law. Under Del.Code Ann. tit. 10 § 6302[5] "joint tort-feasors" are granted the right of contribution from other "joint tort-feasors." In addition, if fault among "joint tort-feasors" is found to be disproportionate, the pro rata share of those tort-feasors is determined

by reference to their relative degrees of fault. Thus, leaving aside the issue of the decedent's own negligence, if Blair were not the decedent's employer and were otherwise a proper party to the suit, the jury could allocate liability between Blair and D.E.C. by determining the proportion of fault attributable to Blair and the proportion attributable to defendant.

The problem in the instant case is that Blair is not a "joint tort-feasor." Del.Code Ann. tit. 10 § 6301 defines those who may be termed "joint tort-feasors." That section provides: "For the purposes of this chapter, "joint tort-feasors" means 2 or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Del.Code Ann. tit. 10 § 6301 (1974). Blair may not be held "liable in tort" for decedent's death under the Pennsylvania Workmen's Compensation Act. 77 Pa.Stat. Ann. §§ 1–1603 (1992). Section 481 of title 77 prohibits an employer from being held liable for the work related injuries of its employee. 77 Pa.Stat.Ann. § 481 (1992). That same section specifies that an employee or anyone otherwise entitled to damages may bring suit against a third party, and that in such case, the employer cannot be held liable to the third party for damages, contribution or indemnity except if those parties had previously contracted for such liability. *Id.*

Blair, by virtue of Pennsylvania's worker's compensation scheme, cannot be "liable" for the decedent's death. Blair cannot, there-

---

**3.** As determined earlier, the Court looks to Delaware law to decide the evidentiary issue, particularly in light of the fact that it turns on a reading of the Delaware Uniform Contribution Among Tort–Feasors Law. Reference is made to the Pennsylvania Workmen's Compensation Act, however, because that Act governs matters relating to work related injuries as between the decedent and Blair and as a result, plaintiffs' receipt of worker's compensation benefits under that Act.

**4.** As previously noted, the plaintiffs are receiving compensation benefits under the Pennsylvania Workmen's Compensation scheme. The Court concludes that the Delaware Supreme Court would take into account Pennsylvania's award of worker's compensation benefits to plaintiffs.

**5.** Del.Code Ann. tit. 10 § 6302 provides:

(a) The right of contribution exists among tort-feasors.

(b) A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rate share thereof.

(c) A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement.

(d) When there is such a disproportion of fault among joint tort-feasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tort-feasors shall be considered in determining their pro rata shares.

fore, be deemed a "joint tort-feasor" under Del.Code Ann. tit. 10 § 6301 as one can only be a "joint tort-feasor" if one is "liable in tort for the same injury" as an other tort-feasor. Because Blair is not a "joint tort-feasor," defendant cannot seek to have the jury apportion the liability between itself and Blair in accordance with their pro rata shares of fault.

Running through defendant's argument on this issue is a theme of equity. Understandably, defendant wishes not to suffer the full brunt of a judgment, albeit reduced by an amount corresponding to decedent's own fault, for an occurrence which was not entirely its fault. Defendant's insistence that the jury hear all the facts obviously stems from its notion that if the jury were to hear of Blair's contribution to this tragic accident, the jury would not lay as much "blame" at the doorstep of defendant. While the Court appreciates defendant's concern in this regard, it's attempt to implicate Blair is simply out of step with legal principles. The long-standing common law rule is that where one putative defendant is for some reason immune from liability, the other defendant(s) remain fully liable. *See Restatement (Second) of Torts* § 880 (1979).

In summary, the Court finds Blair is not a "joint tort-feasor" within the meaning of section 6301 of title 10 of the Delaware Code. It follows defendant may not seek apportionment of liability between itself and Blair. Defendant's attempt to provide the jury with "all the facts" does exactly that. For that reason evidence of Blair's negligence is irrelevant and therefore inadmissible.

### B. *Admissibility to Show Intervening–Superseding Cause*

■ Defendant also obliquely refers to the fact that Blair's negligence in failing to adequately train and/or supervise the decedent may be found to constitute an intervening-superseding cause and thereby relieve defendant of liability.[6] The Court must, therefore, consider whether evidence of Blair's negligence would be admissible for the purpose of demonstrating such negligence was an intervening-superseding cause of decedent's death. This question turns on basic notions of relevancy and prejudicial impact.

First, as a theoretical matter, it appears such evidence would generally be admissible to prove the existence of an intervening-superseding cause, as the existence of such cause would be relevant. Further, unlike the previous question, there appears to be no statutory basis for exclusion of such evidence. Thus, whether such evidence may be excluded as irrelevant depends upon the circumstances of any particular case.

In the instant case, the issue of intervening-superseding cause revolves around the decedent's failure to wear his protective gear at the time he was electrocuted. This fact is the sole possible intervening superseding cause in this case. Defendant desires to illuminate the jury as to the reason decedent was not wearing his protective gear, and it asserts that reason was Blair's failure to supervise and/or train decedent adequately. But the *reason* behind decedent's failure to wear his protective gear is not an intervening-superseding cause. It is the *fact* that he failed to wear it that caused his death. The Court holds as a matter of law Blair's actions cannot constitute an intervening-superseding cause, and therefore may not be introduced into evidence because it simply is not relevant.

■ In addition, even if the Court were to find Blair's negligence in some way relevant, it would still be excluded because the prejudice far outweighs its probative value. If admitted, although such actions should not be considered as evidence that Blair was responsible for a certain proportion of fault, the Court believes that notwithstanding a cautionary instruction the jury could not help but apply the evidence in that manner. In doing so, it would do that which is prohibited: It would use the information to reduce defendant's proportion of fault in contravention of the worker's compensation scheme and statutes regarding contribution. Because of this,

---

6. In defendant's brief it asserts it has evidence that Blair and its employee/foreman "were also negligent in a fashion which *wholly* or partially proximately caused Mr. Cox's electrocution and death." D.I. 46 at 6 (emphasis added).

**248**

the Court finds admission of evidence of Blair's negligence would be far more prejudicial than probative and must be excluded.

### C. *Conclusion*

Evidence of Blair's negligence is not relevant to the issue of proportioning defendant's liability. Similarly it is not relevant to show decedent's death was due to some intervening-superseding cause rather than any negligence of defendant. Even if the Court had found Blair's negligence relevant to that issue, under the circumstances of this case, its prejudicial effect would outweigh its probative value. Plaintiffs' motion in limine to preclude introduction of evidence of Blair's negligence will be granted.

## IV. VIABILITY OF JOSEPH COX SR.'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

■ Defendant moves the Court to preclude and/or dismiss plaintiff, Joseph Cox Sr.'s claim for negligent infliction of emotional distress. For the reasons that follow, the Court finds resolution of this issue must await trial.

Under the test enunciated by the Delaware Supreme Court in *Robb v. Pennsylvania R.R. Co.*, 210 A.2d 709 (Del.1965), plaintiff must show (1) that he was within the "zone of danger" from defendant's negligence, (2) that such negligence caused him to suffer "fright," and (3) that the fright produced compensable physical consequences. Defendant contends plaintiff cannot demonstrate two elements critical to his claim for negligent infliction of emotional distress. Defendant asserts plaintiff exhibited no evidence of a present physical injury. It also asserts plaintiff was not in the "zone of danger" at the time of the accident causing decedent's death.

The record is insufficient for the Court to determine whether plaintiff was in the "immediate area of physical danger from the negligence," *i.e.*, the zone of danger. For this reason defendant's motion to "dismiss" plaintiff's claim must be denied at this time.

The second element defendant contests is plaintiff's ability to show he has suffered some compensable physical injury as a result

of being in the zone of danger at the time of the occurrence of the incident giving rise to the litigation. *Robb*, 210 A.2d at 714–15. The Superior Court has required plaintiff have "actual physical injury caused by the immediate observance of the negligent activity." *Snavely v. Wilmington Medical Ctr., Inc.*, C.A. No. 82C–SE–53 (March 18, 1985). In the instant case, plaintiff "observed" the negligent activity, i.e. the electrocution of his son. At his deposition Joseph Cox, Sr. testified that although he was not looking at his son at the time of the electrocution, "I heard him hollering. I thought I heard him hollering, 'Dad.' But I don't—you know, to be a hundred percent sure I don't know. I thought he hollered, 'Dad.' And when I looked down is when I saw him dropping in the bucket." D.I. 44, Ex. C at 40. This combination of audio and visual signals processed substantially contemporaneously to decedent's electrocution satisfies the observation requirement. There remains the question whether Joseph Cox Sr. suffered contemporaneous physical injury as a result of this observance. There is no record before the Court at this time from which it can make such a determination. Therefore, the question whether this element of plaintiff's cause of action can be met must also await trial for resolution.

The record has not yet been developed to the point at which the Court is able to determine whether plaintiff will be able to demonstrate all the elements of his claim for negligent infliction of emotional distress. For this reason, defendant's motion to preclude or dismiss plaintiff's claim must be denied.

## V. CONTRACTUAL DUTIES OF DEFENDANT

■ Plaintiffs move this Court to "declare and interpret the contractual duties of D.E.C." D.I. 45 at 20. The Court declines to do so. The contractual duties referred to are those arising from the contract between defendant and decedent's employer, Blair.

Plaintiffs insist that "parties to a contract are bound to perform in a non-negligent fashion those duties which they agree to undertake in the contract." D.I. 45 at 20. First, it is not clear whether by this statement plaintiffs mean to pursue a contractual

or tort claim. To the extent plaintiffs may seek to pursue a contractual claim, the motion is denied. No such claim has been pleaded or pursued in the course of this litigation and it would be prejudicial to defendant to permit such a theory to go forward at this late stage.

Second, if by this statement plaintiffs seek to establish particular duties owed by defendant to the decedent which, under a tort theory, they will seek to prove were breached, plaintiffs' motion is also denied. Plaintiffs present no authority for the proposition that contractual provisions should be deemed duties the breach of which will result in liability. But even if this were so, and the Court were to attempt to interpret the contract to discern exactly what duties were owed by defendant to the decedent, the Court's attempt would not be fruitful. To begin with, as plaintiffs state in their brief, the Court has not been supplied with a complete copy of the contract between defendant and Blair. It is impossible for the Court to properly interpret any contract when the entire document is not before it. In addition, there has not been sufficient briefing on the issue of contract interpretation to allow the Court to adequately address the parties contentions. The Court declines to delay trial in order to have the issue placed properly before the Court.

The Court also notes plaintiffs' motion is simply a veiled attempt to conclusively establish the negligence of the defendant. As such, it is a case dispositive motion masquerading as a motion *in limine*. By order of this Court dated March 3, 1992 the deadline for filing case dispositive motions was September 1, 1992. The time for filing such motion has long passed, and it will not be considered on the eve of trial.

Plaintiffs' motion comes too little and too late.