Darryl DUPHILY, Plaintiff
Below, Appellant,

and

Delaware Insurance Guaranty
Association, Intervenor
Below, Appellant,

v.

DELAWARE ELECTRIC COOP-
ERATIVE, INC., Defendant
Below, Appellee.

No. 148, 1994.

Supreme Court of Delaware.

Submitted: June 20, 1995.

Decided: July 31, 1995.

824

John S. Grady (argued), of Grady & Hampton, P.A., Dover, for appellant Darryl Duphily.

Julius Komissaroff of Komissaroff & Perry, Wilmington, for intervenor-appellant Delaware Ins. Guar. Assn.

Roger A. Akin (argued), of Sawyer & Akin, P.A., Wilmington, for appellee Delaware Electric Co-op, Inc.

Before VEASEY, C.J., WALSH, HOLLAND, and HARTNETT, JJ., and DUFFY, J., Retired,[1] constituting the Court *en Banc*.

WALSH, Justice:

In this appeal from the Superior Court, we consider whether an employer's negligence may constitute a superseding cause in an employee's negligence action against a third-party tortfeasor. We conclude that, under the circumstances of this case, the alleged negligence of the employer may be raised as evidence of superseding cause even though the employer is otherwise immune from suit under workers' compensation laws and thus cannot be deemed a "joint tortfeasor." We also find that there was sufficient evidence presented at trial to warrant a jury instruction on superseding causation. Nevertheless, we hold that the jury verdict, rendered through special interrogatories, was facially inconsistent and not responsive to the jury instructions. Accordingly, we reverse the judgment of the Superior Court entered on the jury's verdict which relieved the alleged tortfeasor of liability.

In addition, we hold that the employer's workers' compensation insurance carrier is permitted to introduce evidence of the employee's medical bills notwithstanding the bar of the Delaware no-fault statute. We also find that the trial court did not err in denying plaintiff's motion for a directed verdict. The court erred, however, in permitting testimony of a defense witness who was not quali-

---

1. Sitting by designation pursuant to Supreme Court Rule 2 and Del.Const., art. IV., §§ 12 and 38.

fied as an "expert" concerning his "opinion" as to the appropriate height of electrical wires under relevant safety regulations. Finally, we conclude that evidence of an employee's violation of an Occupational Safety and Health Administration ("OSHA") regulation is permissible to show contributory negligence if the party asserting such negligence makes a sufficient showing that the employee was informed of the regulation.

I

The relevant facts adduced at trial are as follows. During the summer of 1990, the appellant/plaintiff-below Darryl Duphily ("Duphily") was employed by New Look Homes, Inc. ("New Look Homes"), a company that sells and installs double-wide mobile homes ("double-wides"). Double-wides are single story, prefabricated houses that are hauled in sections to a home site where they are erected as a single structure. Duphily was a helper on a crew that installed double-wides. On August 7, 1990, Duphily was electrically shocked while installing a double-wide at White House Beach, a mobile home park near Millsboro.

In June of 1990, William Hamilton ("Hamilton") purchased a double-wide from New Look Homes to be installed on a lot located at 416 Boat House Lane in White House Beach. Two months later, New Look Homes delivered the double-wide in two sections to the site for installation. In order to get the sections of the double-wide onto the designated site, a truck trailer had to back each section of the double-wide from an adjacent road, over a strip of grass and under a set of three parallel electric lines. The electric lines consisted of a phase wire charged with 7200 volts of electricity at a height of approximately nineteen feet, a neutral electrical wire at approximately eleven feet, and a low voltage coaxial cable television wire at a height of approximately eight feet.[2]

The first section of the double-wide was temporarily installed by Duphily and other employees without incident. When the second section of the double-wide arrived, however, John Starke ("Starke"), president of New Look Homes, determined that the first section had to be removed because it was installed improperly. The employees then moved the first section off the lot and parked it on Boat House Lane. Starke then backed the other half of the double-wide into the lot while three employees gave him directions. Because the double-wide was thirteen and one-half feet high, it was apparent that it would snag on the neutral wire and the television cable. Duphily, on his own initiative but apparently with his employer's knowledge and tacit approval, climbed atop the double-wide. With his bare hands, he lifted the television cable and the neutral wire to allow the double-wide to pass under these wires. As he was walking backwards along the edge of the moving roof while holding the lower two wires, Duphily began to lose his balance when the truck passed over a speed bump. In order to prevent his fall from the edge of the moving home, Duphily instinctively grabbed the 7200 volt live wire and was shocked. As a result, Duphily was severely burned. He suffered a permanent injury to his leg and one of his forearms required amputation.

One month before the accident, a tree had fallen on the wires during a storm. Delaware Electric Cooperative, Inc. ("Delaware Electric"), the entity that owned and maintained the highest two electrical lines, sent a crew to repair the damage that night. By flashlight, the repair crew "resagged" the wires without measuring the "sag."[3] The wires were apparently sagged too low during the repairs. If the wires had been at their proper heights at the time of the accident, the double-wide could have passed under them without human intervention.

Duphily filed a negligence action against Simmons Cable T.V. ("Simmons"), owner of the cable wire, and Delaware Electric for failing to keep the electrical and cable wires

---

**2.** The exact height of each of the electrical wires was disputed at trial.

**3.** During installation, electrical wires are strung rather loosely so that they may expand and contract. The wires are strung to a scientifically determined catenary, known as a "sag." The process of loosening a wire between two utility poles to provide the correct catenary is known as "sagging."

at a proper height.[4] Duphily's medical expenses, totaling over $115,000, had been paid by New Look Homes' workers' compensation insurance carrier, International Underwriter Insurance Company ("International"), until it was placed in liquidation. Later, Duphily's medical expenses were paid by Delaware Insurance Guaranty Association ("DIGA"), which had assumed the rights and obligations of International. Because Duphily was atop a trailer pulled by a truck owned by New Look Homes when he sustained his injuries, Duphily was presumably eligible for Personal Injury Protection ("PIP") insurance benefits from New Look Homes' no-fault insurance carrier. Duphily has not asserted a claim for PIP benefits.

Before trial, DIGA filed a motion to intervene so that it could assert its workers' compensation lien for the benefits it paid to Duphily. 19 Del.C. § 2363. Although the Superior Court granted DIGA's motion to intervene, it held that neither DIGA nor Duphily were permitted to introduce into evidence the first $100,000 of Duphily's medical expenses, which represented the monetary amount that Duphily could have pursued against New Look Homes' PIP insurance carrier. 21 Del.C. § 2118. The court also denied Duphily's pre-trial motion which sought to exclude any evidence of negligence on the part of his employer, New Look Homes, ruling that such evidence was relevant to the issue of supervening cause.

At trial, Duphily argued that Delaware Electric was negligent per se because it maintained its electrical wires lower than the minimum height permitted by the National Electric Safety Code ("NESC"), which is the standard required of electrical utilities. The parties agreed that the coaxial cable wire and the neutral wire were lower than the minimum standard provided by the NESC. Duphily offered evidence that the phase wire was also below the NESC minimum, while Delaware Electric offered evidence to the contrary. At the close of Delaware Electric's case, Duphily moved for a directed verdict,

which was denied by the court. Duphily also objected to a proposed instruction concerning the effect of his employer's negligence, arguing that there was insufficient evidence for the issue of superseding cause to go to the jury. The court overruled Duphily's objection and instructed the jury on superseding cause. The jury was directed to render its verdict in the form of special interrogatories, two of which addressed the issue of whether New Look Homes was negligent and whether such negligence was a superseding cause of Duphily's injury.

The jury's response to the interrogatories was as follows: (i) Delaware Electric was negligent, and its negligence proximately caused Duphily's injury; (ii) New Look Homes was also negligent, and its negligence was a superseding cause of Duphily's injury. The result of the jury's verdict was to relieve Delaware Electric of all responsibility for Duphily's injury because of New Look Homes' "superseding cause," even though the jury determined that the negligence of Delaware Electric had proximately caused Duphily's injuries. Duphily filed post-trial motions attacking the jury's verdict, but the Superior Court refused to disturb the verdict.

On appeal, Duphily claims that the trial court erred: (i) in permitting introduction of any evidence as to the negligence of New Look Homes; (ii) in instructing the jury on superseding causation; (iii) in denying his motion for a new trial on the ground that the jury verdict was contradictory and inconsistent with the jury instructions; (iv) in excluding evidence of $100,000 of his medical expenses; (v) in permitting a defense fact witness to testify as an expert witness; (vi) in permitting argument that Duphily violated OSHA regulations; and (vii) in denying his motion for a directed verdict. We address these claims seriatim.

## II

■ Duphily's first claim of error pertains to the admissibility of his employer's negli-

---

4. Duphily later amended his complaint to include White House Beach, Inc., the entity that ran the mobile home park. In addition, Simmons filed a third-party complaint against Hamilton as the owner of the lot. During trial, Duph-

ily settled his claims against Simmons and White House Beach, Inc. Consequently, Simmons' third-party complaint against Hamilton was dismissed.

gence. Prior to trial, Duphily filed a motion *in limine* in which he sought to bar the introduction of any evidence at trial showing that the negligence of New Look Homes superseded Delaware Electric's negligence and proximately caused Duphily's injuries. In denying the motion, the Superior Court agreed that the negligence of New Look Homes was irrelevant to the issue of apportioning liability since Duphily's employer could not be a joint tortfeasor under 10 *Del.C.* §§ 6301–6308. *Darryl Duphily v. Delaware Electric Cooperative, Inc.,* Del.Super., C.A. No. 91C–05–021, slip op. at 2, 1993 WL 488964, (Nov. 13, 1993) ("Pretrial Order"). The court held, however, that although the negligence of New Look Homes could not be admitted to establish joint tortfeasor status, it was nonetheless a jury question whether such negligence "however supported factually, was a superseding cause relieving defendants of liability." *Id.* at 3. On appeal, Duphily claims that the court erred in permitting any consideration of his employer's negligence because it was irrelevant and unfairly prejudicial. Duphily argues that such evidence was impermissible under the ruling in *Cox v. Delaware Electrical Cooperative, Inc.,* D.Del., 823 F.Supp. 241 (1993), and its admission confused the jury and deprived him of a fair trial.

In *Cox,* an electrical lineman was killed when he came into contact with a high voltage wire while working on a power line for his employer. The decedent's father brought suit against Delaware Electric, the utility that owned and maintained the power lines. As in this case, the decedent's employer was not joined as a defendant in the suit because the workers' compensation laws prohibited any assessment of damages against the employer regardless of its comparative fault. *Cox,* 823 F.Supp. at 245. Notwithstanding the workers' compensation bar, Delaware Electric sought to introduce into evidence negligence of the decedent's employer in not properly training the employee, either to shift some of its liability to the employer or as evidence of the superseding cause of the decedent's accident.

In a pre-trial ruling, the United States District Court for the District of Delaware held that any evidence of the employer's failure to train or provide the deceased with protective gear was inadmissible. The court ruled that, because the workers' compensation laws directly prevented the decedent's employer from being held liable as a "joint tortfeasor," Delaware Electric could not use evidence of the employer's negligence indirectly to attribute fault to the employer in order to reduce its own liability to the decedent. *Id.* at 247. The court also held that the employer's negligence was irrelevant and unfairly prejudicial under the facts of the case and, therefore, such negligence could not be offered as evidence of the superseding cause of the decedent's accident. *Id.* at 248. The court was careful to explain, however, that the admissibility of such evidence must be decided on a case-by-case basis:

> it appears such evidence [of employer negligence] would generally be admissible to prove the existence of an intervening-superseding cause, as the existence of such cause would be relevant. [W]hether such negligence may be excluded as irrelevant depends upon the circumstances of any particular case.

*Id.* at 247.

In this case, the Superior Court applied the *Cox* balancing test, holding that the circumstances surrounding Duphily's injury were relevant to the issue of superseding cause and that the probative value of the alleged negligence of Duphily's employer was not substantially outweighed by its prejudice:

> Here the issue of superseding cause revolves around the rationale for plaintiff's presence in the precarious position on top of the home and the reasons for his attempt to move the wires while on top of the cargo of a moving vehicle. The reason causing his presence there and his actions are relevant. There is no basis to conclude the probative value of this relevant evidence is substantially outweighed by prejudice. These facts go to the essence of the case and a common sense resolution of what occurred and why.

We fully agree with the Superior Court that the circumstances surrounding Duphily's accident (i.e., the alleged negligence of New Look Homes) were relevant to

the issue of superseding cause. As a general matter, we defer to the trial court's discretion in making evidentiary rulings because it "is in a unique position to evaluate and balance the probative and prejudicial aspects of evidence." *Lilly v. State*, Del.Supr., 649 A.2d 1055, 1059 n. 2 (1994) (quotation omitted). The court in *Cox* intimated that the real claim of the defendant was contributory negligence on the part of the decedent, not superseding cause. *Cox*, 823 F.Supp. at 247. Here, however, the issue pertains to the alleged negligence of New Look Homes—not to any contributory negligence by Duphily— since the actions of New Look Homes were clearly relevant to his accident. When a party's negligence is relevant to the injury-producing event but not actionable, a defendant may nonetheless introduce evidence to establish that the negligence of the immune party was the *supervening* cause of the plaintiff's injury. *See Sears, Roebuck & Co. v. Huang*, Del.Supr., 652 A.2d 568, 573 (1995).[5] We therefore find no error in the court's decision to permit evidence of negligence on the part of New Look Homes.

### III

Duphily next claims that the court erred in instructing the jury on superseding cause because there was insufficient evidence presented at trial to warrant such an instruction. In order to prevail in a negligence action, a plaintiff must show, by a preponderance of the evidence, that a defendant's negligent act or omission breached a duty of care owed to plaintiff in a way that proximately caused the plaintiff injury. *Culver v. Bennett*, Del.Supr., 588 A.2d 1094, 1096–97 (1991). In this case, at least two of the sagging wires were in violation of NESC requirements, standards which were designed to prevent electrical injuries. It was argued at trial that, because Duphily was injured as a result of its violation of NESC standards, Delaware Electric was negligent

*per se* in creating a dangerous situation which proximately caused his injuries. On appeal, Duphily claims that, once it was shown that he was injured as a result of Delaware Electric's negligence, no evidence of how he came into contact with the live wire (through his employer's alleged negligence) was legally permissible. We disagree. A finding of negligence does not, *ipso facto*, translate to or include a finding of proximate cause.

Adoption of Duphily's position would require this Court to transform a finding of negligence to one of absolute liability. It is well established that the violation of a Delaware statute enacted for the safety of others is evidence of negligence *per se*. *Wright v. Moffitt*, Del.Supr., 437 A.2d 554, 557 (1981); *Sammons v. Ridgeway*, Del.Supr., 293 A.2d 547, 549 (1972). "To be actionable, however, there must be a causal connection between such a statutory violation and the injury alleged." *Wright*, 437 A.2d at 557 (citing *Wealth v. Renai*, Del.Super., 114 A.2d 809, 811 (1955)). A finding of negligence by the defendant, standing alone, will not sustain an action for damages unless it is also shown to be a proximate cause of plaintiff's injury. *See Wyatt v. Clendaniel*, Del.Supr., 320 A.2d 738, 739 (1974); *James v. Krause*, Del.Super., 75 A.2d 237, 241 (1950). Although a utility is liable for electricity-related injuries proximately caused by its negligence, it is *not* an insurer of the safety of the public. *Hercules Powder Co. v. DiSabatino*, Del.Supr., 188 A.2d 529, 533 (1963). Thus, even if it was shown that Delaware Electric was negligent *per se* by violating NESC standards, it must nonetheless be demonstrated that its negligence was a proximate cause of Duphily's injury.

Delaware recognizes the traditional "but for" definition of proximate causation. *Laws v. Webb*, Del.Supr., 658 A.2d 1000 (1995); *Moffitt v. Carroll*, Del.Supr., 640

---

5. Duphily attempts to distinguish *Huang* by arguing that this case involves a utility which has a high duty of care in safeguarding the public against injury arising from the use of an inherently dangerous instrumentality such as electrical wires, *see Delmarva Power & Light Co. v. Burrows*, Del.Supr., 435 A.2d 716, 718 (1981),

while no corresponding heightened duty existed in *Huang*. We find this argument unconvincing. No matter how high its *duty of care*, a defendant may introduce proof of superseding *cause* when relevant to the case and the evidence could support such a finding.

A.2d 169, 174 (1994); *Culver,* 588 A.2d at 1097. "[O]ur time-honored definition of proximate cause ... is that direct cause without which [an] accident would not have occurred." *Chudnofsky v. Edwards,* Del. Supr., 208 A.2d 516, 518 (1965) (quoted in *Laws,* 658 A.2d at 1007; *Moffitt,* 640 A.2d at 174; *Culver,* 588 A.2d at 1097). In other words, a proximate cause is one "which in natural and continuous sequence, *unbroken by any efficient intervening cause,* produces the injury and without which the result would not have occurred." *Culver,* 588 A.2d at 1097 (quoting *James,* 75 A.2d at 241) (emphasis added).

An intervening cause is one which comes into active operation in producing an injury *subsequent* to the negligence of the defendant. *Restatement (Second) of Torts* § 440 (1965); W. Page Keeton, *et al., Prosser and Keeton on Torts,* § 44 (5th ed. 1984). The mere occurrence of an intervening cause, however, does not automatically break the chain of causation stemming from the original tortious conduct. This Court has long recognized that there may be more than one proximate cause of an injury. *Laws,* 658 A.2d at 1007; *Moffitt,* 640 A.2d at 174; *McKeon v. Goldstein,* Del.Supr., 164 A.2d 260, 262 (1960). In order to break the causal chain, the intervening cause must also be a superseding cause, that is, the intervening act or event itself must have been neither anticipated nor reasonably foreseeable by the original tortfeasor. *Stucker v. American Stores Corp.,* Del.Supr., 171 A. 230, 233 (1934); 1 J.D. Lee & Barry A. Lindahl, *Modern Tort Law: Liability & Litigation,* § 4.07 (1994).

> [I]n a case of negligent conduct followed by an intervening act causing injury, liability of the [original] tortfeasor should turn on whether the risk of particular consequences is sufficiently great to lead a reasonable [person] ... to anticipate them, and to guard against them.

*Sirmans v. Penn,* Del.Supr., 588 A.2d 1103, 1107 (1991) (quoting *Delmarva Power & Light Co. v. Burrows,* Del.Supr., 435 A.2d 716, 719 (1981); W. Prosser, *The Law of Torts* 145 (4th ed. 1971)); *see also Nutt v. GAF Corp.,* Del.Super., 526 A.2d 564, 567 (1987) (holding that original tortfeasor remains liable if the intervening act "ought to have been foreseen, or if, according to the usual experience of mankind, the result ought to have been apprehended"); *McKeon,* 164 A.2d at 262 (holding that liability of original tortfeasor depends upon "whether or not the negligence of the [third party] under the circumstances was something which should have been reasonably foreseeable or reasonably anticipated by the [defendant]"); *Szymanska v. Equitable Life Ins. Co.,* Del.Super., 183 A. 309, 312 (1936) (holding that "[i]n the field of negligence, the intervening negligent act of a third party does not relieve a defendant from liability for his own negligence, if the former was reasonably to be anticipated.").

In short, a superseding cause is a new and independent act, itself a proximate cause of an injury, which breaks the causal connection between the original tortious conduct and the injury. If the intervening negligence of a third party was reasonably foreseeable, the original tortfeasor is liable for his negligence because the causal connection between the original tortious act and the resulting injury remains unbroken. 57A Am. Jur.2d *Negligence* § 621 (1989). If, however, the intervening negligence was not reasonably foreseeable, the intervening act supersedes and becomes the *sole* proximate cause of the plaintiff's injuries, thus relieving the original tortfeasor of liability.[6] *See Huang,* 652 A.2d at 573 (holding that "if one defendant's negligence is found to be the sole proximate cause of the plaintiff's injury, it is a superseding cause which shields the other defendants from liability.").

In this case, the Superior Court's instruction to the jury on superseding cause was

---

**6.** As stated by this Court in *McKeon:*

> A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury even though such injury would not have happened but for such condition or occasion.

*McKeon,* 164 A.2d at 262.

modeled, in part, after Section 447 of the Restatement (Second) of Torts. That section provides:

§ 447. **Negligence of Intervening Acts**

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

*Restatement (Second) Torts* § 447 (1965).[7]

Duphily maintains that, *in this case,* there was insufficient evidence for the issue of superseding causation to go to the jury. It is argued that Delaware Electric, by maintaining its electrical wires too low, created a dangerous situation (foreseeable risk of harm) that someone might come in contact with them. "An event is foreseeable if a defendant should have recognized the risk of injury under the circumstances. It is irrelevant whether the particular circumstances were foreseeable." *Delaware Electric Cooperative, Inc. v. Pitts,* Del.Supr., No. 90, 1993, slip op. at 4, 1993 WL 445474, Horsey, J. (Oct. 22, 1993) (ORDER). Duphily claims that his injury was precisely the type of foreseeable risk created by the low wires which should have been anticipated by Delaware Electric, even if the particular circum-

stances of his injury were unforeseeable. It is argued that the manner in which New Look Homes dealt with the dangerous condition caused by Delaware Electric's negligence was normal and foreseeable. At a minimum, Duphily contends that New Look Homes was not extraordinarily negligent in placing him in a position to come into contact with the electrical wires. *See Restatement (Second) Torts* § 447 (1965).

The crucial question in this case is whether the issue of superseding causation may be determined *as a matter of law.* This Court has consistently held that the issue of proximate cause is ordinarily a question of fact to be determined by the trier of fact. *Laws,* 658 A.2d at 1007; *Huang,* 652 A.2d at 572; *Money v. Manville Corp. Asbestos Disease Comp. Trust Fund,* Del.Supr., 596 A.2d 1372, 1375 (1991); *Culver,* 588 A.2d at 1098; *Wyatt v. Clendaniel,* Del.Supr., 320 A.2d 738, 739 (1974); *Chudnofsky,* 208 A.2d at 519; *Boyd v. Hammond,* Del.Supr., 187 A.2d 413, 416 (1963); *Carnes v. Winslow,* Del.Supr., 182 A.2d 19, 22 (1962); *McKeon,* 164 A.2d at 263; *Stucker v. American Stores Corp.,* Del. Supr., 171 A. 230, 232 (1934). To be sure, the issue of proximate cause "is to be determined, *on the facts,* upon mixed considerations of logic, common sense, justice, policy and precedent." *Chudnofsky,* 208 A.2d at 518 (emphasis added).

Just as the issue of proximate cause is generally a question for the jury, similarly, the question of superseding causation is fact-driven. *Laws,* 658 A.2d at 1008 n. 8; *Vadala v. Henkels & McCoy, Inc.,* Del.Super., 397 A.2d 1381, 1383 (1979); 57A Am. Jur.2d *Negligence* § 601 (1989); 1 *Modern Tort Law, supra,* § 4.07. Indeed, in application, the factors of Section 447 of the Restatement undoubtedly present questions of fact. Under that section, an intervening negligent act will not relieve the original tortfea-

---

7. This Court has cited Section 447 approvingly in the past. *McKeon,* 164 A.2d at 262; *Sirmans,* 588 A.2d at 1108 n. 4; *see also Nutt,* 526 A.2d at 567. We note, however, that part of Section 447 is currently inconsistent with Delaware law since this Court rejected the "substantial factor" rule of proximate cause in favor of the common law "but for" rule of proximate causation. *Culver,*

588 A.2d at 1099. Nonetheless, the Superior Court did not use the "substantial factor" portion of Section 447 in its instructions to the jury, and, in our view, the "but for" change does not alter the substance of the provision. We thus approve Section 447 of the Restatement with this slight variation.

sor from liability if: the original tortfeasor at the time of his negligence *should have realized* (foreseen) that another's negligence might cause harm; or, if a *reasonable person* would not consider the occurrence of the intervening act as *highly extraordinary;* or, if the intervening act was not *extraordinarily negligent.* Considerations of foreseeability and what a reasonable person would regard as highly extraordinary are factual questions ordinarily reserved for the jury. *See Prosser and Keeton on Torts, supra,* § 45 at 320 ("The issue of whether a described consequence is 'foreseeable,' or was 'directly' caused, and the issue as to whether an intervening force was 'abnormal' are to be decided ... by a jury."). Additionally, the roles of the court and the jury in resolving the issue of superseding causation are set forth in Section 453 of the Restatement. Comment b of that section provides:

> If, however, the negligent character of the third person's intervening act or the reasonable foreseeability of its being done (see §§ 447 and 448) is a factor in determining whether the intervening act relieves the actor from liability for his antecedent negligence, and under the undisputed facts there is room for reasonable difference of opinion as to whether such act was negligent or foreseeable, the question should be left to the jury.

*Restatement (Second) Torts* § 453 cmmt. b (1965).

■■■ In other words, only where there can be no reasonable difference of opinion as to the conclusion to be reached on the question of whether an intervening cause is abnormal, unforeseeable, or extraordinarily negligent, should the question be determined by the Court as a matter of law. *Vadala,* 397 A.2d at 1383. Here, there was evidence presented that New Look Homes either instructed or knowingly permitted Duphily to get on the roof of a moving structure, without any means of support, to bare-hand electrical wires while walking backwards along the edge of the house. While performing these tasks, it was anticipated that the trailer would pass over uneven terrain, including a speed bump. New Look Homes permitted Duphily to engage an obviously dangerous

venture with no instructions or precautionary safeguards. Under the circumstances, we believe that reasonable minds could differ whether New Look Homes was extraordinarily negligent or not in permitting Duphily to encounter this highly dangerous situation.

We conclude, therefore, that there was a sufficient factual basis for the issue of superseding cause to go to the jury. To be sure, there may be circumstances where only one conclusion may be drawn from the established facts which would warrant a finding of superseding cause, or the lack thereof, as a matter of law. *See generally DiSabatino,* 188 A.2d at 535. In this case, however, the issue was properly reserved for the trier of fact.

## IV

Duphily's next claim of error relates to the jury verdict. After receiving its instructions, the jury was requested to provide its verdict through the following interrogatories.

QUESTION NO. 1: Was the Delaware Electric Cooperative negligent in this case?

ANSWER: YES____ NO____

If you answered the above question "no", please sign the verdict form, inform the bailiff and return to the courtroom. If you answered the above question "yes", proceed to Question Number 2.

QUESTION NO. 2: Do you find that the negligence of the Delaware Electric Cooperative proximately caused Darryl Duphily's injuries?

ANSWER: YES____ NO____

If you answered the above question "no", please sign the verdict form, inform the bailiff and return to the courtroom. If you answered the above question "yes", proceed to Question Number 3.

QUESTION NO. 3: Was New Look Homes negligent in this case?

ANSWER: YES____ NO____

If you answered the above question "no", please sign the verdict form, inform the bailiff and return to the courtroom. If you answered the above question "yes", proceed to Question Number 4.

QUESTION NO. 4: Do you find that the negligence of New Look Homes was a superseding-intervening cause of Darryl Duphily's injuries? [8]

ANSWER: YES___ NO___

If you answered the above question "yes", please sign this verdict form, inform the bailiff and return to the courtroom. . . .

The jury answered each interrogatory in the affirmative, thus resulting in a verdict in favor of Delaware Electric and against Duphily. Duphily claims that the jury verdicts are inherently contradictory and inconsistent with the jury instructions. In essence, he claims that the jury's findings as to the first and second interrogatories are inconsistent with its finding as to the fourth interrogatory. In other words, the jury's finding that Delaware Electric was negligent assumes that his injury was foreseeable, and this conclusion contradicts the jury's finding that New Look Homes' negligence was a superseding cause, i.e., unforeseeable. Moreover, Duphily claims that the jury's conclusion that Delaware Electric proximately caused Duphily's injury was contradicted by its finding of superseding causation on the part of New Look Homes. It is argued that, once the jury found that Delaware Electric's negligence proximately caused Duphily's injury, it could not thereafter consider the issue of superseding causation. Although Duphily objected to any reference to superseding causation in the jury instructions and interrogatories, he did not object to the form of the interrogatories.[9] Delaware Electric argues that Duphily's failure to object to the form of the special interrogatories at trial constitutes a waiver of his right to raise the issue on appeal.

■■■■ As a general matter, this Court will review only those questions fairly presented to the trial court in the first instance.

Supr.Ct.R. 8; *Culver*, 588 A.2d at 1096; *Jenkins v. State*, Del.Supr., 305 A.2d 610 (1973). The failure to object at trial ordinarily constitutes waiver of the right to raise the issue on appeal unless the error is "plain." *See Culver*, 588 A.2d at 1096; *Eustice v. Rupert*, Del.Supr., 460 A.2d 507, 511 (1983); *see also Medical Center of Delaware v. Lougheed*, Del.Supr., 661 A.2d 1055, 1060 (1995). In other words, "where substantial rights are jeopardized and the fairness of the trial imperiled, this Court will apply a plain error standard of review." *Stansbury v. State*, Del.Supr., 591 A.2d 188, 191 (1991). For this Court to find plain error, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." *Robertson v. State*, Del.Supr., 596 A.2d 1345, 1356 (1991) (quoting *Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100, *cert. denied*, 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986) (internal citations omitted)). This Court has applied the concept of plain error in civil as well as criminal appeals. *See Culver*, 588 A.2d at 1099; *Riggins v. Mauriello*, Del.Supr., 603 A.2d 827 (1992). In this case, therefore, we must determine whether the jury's responses to the special interrogatories were contradictory as a matter of law, and whether the error so affected the appellant's rights that the failure to object at trial is excused. *Culver*, 588 A.2d at 1096.

■■■■ Duphily contends that the jury's finding of negligence as to Delaware Electric in the first interrogatory is contradicted by the jury's answer in the fourth interrogatory that the negligence of New Look Homes was a superseding cause. Duphily notes that the jury's finding of negligence on the part of Delaware Electric assumes that the injury to Duphily was foreseeable. In response to the fourth interrogatory, however, the jury also found that the conduct of New Look Homes

---

8. By answering the fourth interrogatory in the affirmative, the jury never reached the issues in the remaining interrogatories, which included the alleged contributory negligence of Duphily.

9. Duphily argues in this Court that his position asserted at trial objecting to the application of the "defense" of superseding cause extended to all aspects of its use, including its inclusion in the jury interrogatories. In our view, however,

counsel are obligated to state their objections on the record, not only for the purpose of preserving grounds for appeal, but to assist the trial judge to understand counsel's position and, where possible, to attempt to resolve differences through language modification. This case illustrates the importance of specific objections, since the interrogatories were defective while the instructions were free of error.

was unforeseeable. It is argued that the jury's answers to these interrogatories are therefore inherently inconsistent and irreconcilable. We disagree.

With respect to the foreseeability analysis in determining the negligence of Delaware Electric, the court instructed the jury:

> In determining negligence, you should decide whether the events of this case were reasonably foreseeable. An event is foreseeable if Defendants should have recognized the risk of injury under the circumstances. It is irrelevant whether the particular circumstances were foreseeable. For an event to be foreseeable, it does not mean that a negligent party ought to have foreseen a particular consequence or a precise form of injury or a particular matter of occurrence, or that injury would occur to a particular person.

 In general, therefore, a finding of negligence (breach of duty owed to another party) assumes that the risk of injury was foreseeable under the circumstances, although the particular circumstances of the plaintiff's injury may not have been reasonably anticipated. *See Pitts*, slip op. at 4. In dealing with superseding cause, however, the focal point of the foreseeability analysis shifts from the *injury* to the *intervening event*. Liability of the original tortfeasor turns on whether the intervening act—not the risk of injury—was a normal or foreseeable consequence of the situation created by the defendant's negligence. It was entirely plausible and consistent, therefore, for the jury to find that, under the circumstances, the risk of injury to Duphily was foreseeable as a result of Delaware Electric's negligence (in failing to sag the wire in compliance with NESC standards), while the manner in which he was injured (New Look Homes' negligence) was not.

 Duphily also contends that the jury's answers to the second and fourth interrogatories are facially contradictory and are inconsistent with the jury instructions. By its response to the second interrogatory, the jury found that Delaware Electric's negligence proximately caused injury to Duphily. The answer to the fourth interrogatory, however, suggests that, despite the causal connection between the negligence of Delaware Electric and the injury, Duphily cannot recover because of the subsequent negligence of New Look Homes. In light of its answer to the second interrogatory, Duphily contends that the jury could not logically find that the negligence of New Look Homes superseded Delaware Electric's negligence once the jury determined that the latter was a proximate cause of Duphily's injury.

To the contrary, Delaware Electric maintains that the jury's answers to the interrogatories are reconcilable. Delaware Electric contends that, although the jury found that its negligence proximately caused Duphily injury, New Look Homes' subsequent negligence negated the initial causal connection between its negligence and Duphily's injury. It is argued that the jury's finding was a chronological progression, and not a legal finding of proximate cause as to Delaware Electric.

In our view, the jury's answers to these interrogatories are facially contradictory. Once the jury found that Delaware Electric's negligence proximately caused Duphily injury, any consideration of superseding causation was unnecessary. In fact, a finding of proximate cause presupposes the absence of any superseding causes. *See Culver*, 588 A.2d at 1097 (holding that a proximate cause is one "which in natural and continuous sequence, *unbroken by any efficient intervening [superseding] cause*, produces the injury and without which the result would not have occurred") (quoting *James*, 75 A.2d at 241) (emphasis added). Similarly, a superseding cause is, by definition, the *sole* proximate cause of an injury. *Huang*, 652 A.2d at 573 ("if one defendant's negligence is found to be the sole proximate cause of the plaintiff's injury, it is a supervening cause which shields the other defendants from liability."). Hence, the jury's finding that the negligence of New Look Homes was the sole proximate cause of Duphily's injury is patently inconsistent with its finding that the negligence of Delaware Electric was also a proximate cause of injury.

In addition, the jury's finding runs afoul of the trial court's instruction on the issue of superseding cause:

If the negligence of New Look Homes was not reasonably foreseeable and *it was an intervening, superseding cause* of Darryl Duphily's accident, you should find the negligence of the Defendant *was not a proximate cause of the accident.*

In sum, the jury's finding that Delaware Electric's negligence was a proximate cause of Duphily's injury, but was superseded by New Look Homes' negligence, was patently contrary to the jury instructions. It is fundamental that the jury have a basic understanding of the law which it is asked to apply in order to intelligently perform its duty in reaching a verdict. Our judicial system is premised upon protecting the integrity of the trial process. When it is manifest, as here, that the jury has misunderstood the applicable law, its ability to perform its duty is undermined and substantial rights of the parties are affected. Clearly, Duphily was significantly prejudiced by the error in the jury verdict. We thus conclude that it was plain and reversible error for the court to permit the jury verdict to stand and that the interests of justice warrant a new trial in this case. *See also 5A Moore's Federal Practice* § 49.04; *Saunders v. State of R.I.*, 1st Cir., 731 F.2d 81 (1984).

V

Although our ruling invalidating the jury verdict requires reversal, we address the remaining claims on appeal for the guidance of the trial court in the event of a retrial.

 Duphily contends that the court erred in ruling that no evidence could be admitted at trial concerning the first $100,000 of his medical expenses. As noted earlier, the workers' compensation carrier, International and later DIGA, fully paid Duphily's medical expenses amounting to approximately $115,000. DIGA then sought to intervene in the action to assert its workers' compensation lien against the tortfeasor. Delaware Electric opposed the intervention, claiming that the Delaware no-fault act (21 *Del.C.* § 2118) was applicable, and no evidence of medical expenses was permissible in a suit against it to the extent of potential no-fault coverage ($100,000). The court granted DIGA's motion to intervene, but ruled that

there was "a nexus between the operation of the vehicle and at least one of the proximate causes of the accident which would entitle [Duphily] to PIP benefits." Thus, the court held that neither Duphily nor DIGA could introduce evidence of Duphily's medical expenses up to the limits of the no-fault coverage ($100,000).

 In Delaware, an employee who is injured within the course of his employment by a third party is permitted to recover workers' compensation benefits from his employer and also to pursue a personal injury action against the tortfeasor. The employee is not required to elect between workers' compensation and a suit at law. *Messick v. Star Enterprise*, Del.Supr., 655 A.2d 1209 (1995); *Miller v. Ellis*, Del.Super., 122 A.2d 314 (1956). An employer or its insurer who has paid or become liable for workers' compensation benefits becomes subrogated, however, to the right of action against the party liable for the injury and is entitled to reimbursement for the amount it paid to the employee. *Travelers Ins. Co. v. E.I. DuPont De Nemours & Co.*, Del.Supr., 9 A.2d 88 (1939).

Under 19 *Del.C.* § 2363, a workers' compensation insurance carrier is permitted to join in the employee's personal injury action against a third party to assert its lien. Any recovery by an employee in the action "shall first reimburse the employer or its work[ers'] compensation carrier *for any amount paid or payable* under the Workmen's Compensation Act. . . ." 19 *Del.C.* § 2363(e) (emphasis added). The purpose of this section is to prevent an employee from receiving compensation for his loss by the third-party tortfeasor when the loss has already been compensated through workers' compensation. *State v. Calhoun*, Del.Supr., 634 A.2d 335 (1993). Thus, the law prevents a double recovery by the employee and *permits the employer or its insurer to recoup its compensation payments. Moore v. General Foods*, Del.Supr., 459 A.2d 126 (1983).

Under 21 *Del.C.* § 2118(h), however, any special damages (PIP benefits) covered by the Delaware no-fault statute cannot be pled or introduced into evidence in an action for

damages against a tortfeasor. Delaware Electric maintains that, under this statute, evidence of Duphily's medical expenses which might have been covered by PIP may not be introduced at trial, regardless of whether the PIP benefits were actually ever paid. It is argued that, in an action against an alleged tortfeasor, the right of the workers' compensation insurance carrier to be reimbursed under 19 *Del.C.* § 2363(d) from the employee's recovery is limited by 21 *Del.C.* § 2118(h), which excludes any amount payable under the Delaware no-fault statute. On the facts of this case, we disagree.

Here, it is important to note that Duphily received payments for his medical expenses from the workers' compensation insurance carrier, not the PIP carrier. DIGA thus had a statutory right of subrogation against any recovery from the tortfeasor up to the amount it paid for Duphily's medical expenses. Assuming that Delaware Electric is found liable for its negligence, Duphily is entitled to recover his full damages for his injury, and DIGA is likewise entitled to reimbursement. There is no risk here of double recovery by Duphily. As a matter of fairness, therefore, DIGA should be permitted to introduce evidence of Duphily's medical expenses to protect its right of subrogation. *See also Urell v. Pennewell,* Del.Super., No. 87C–AP–41, 1988 WL 130384, Martin, J. (Dec. 2, 1988); *Tickle v. Spencer,* Del.Super., No. 88C–JA–11, 1990 WL 28587, Barron, J. (Mar. 2, 1990).

We do not believe that 21 *Del.C.* § 2118(h) was intended to foreclose the carrier's rights under 19 *Del.C.* § 2363(d) for reimbursement of medical expenses simply because a motor vehicle was involved in the employee's accident, especially when there has been no claim asserted for PIP benefits. In this case, the jury should have been informed of the amount of payments made by DIGA for Duphily's medical expenses as well as the fact that any recovery for these expenses will be awarded to the carrier instead of the plaintiff. This approach permits the workers' compensation carrier to recover directly

from the tortfeasor and allows the jury to fully understand its role in awarding damages. Accordingly, we hold that, in this case, evidence of Duphily's medical expenses should have been admitted.

## VI

■ Duphily further claims that the trial court erred in permitting testimony by a witness who was not qualified as an expert. At trial, Delaware Electric called as a witness Ralph Spain ("Spain"), its senior electrical engineer responsible for the interpretation and application of the NESC.[10] Duphily objected to any testimony by Spain as to whether the electrical wires comported with NESC at the time Duphily was injured. Specifically, Duphily objected to Spain testifying as an expert since he had not been identified as such in the pre-trial order. The court permitted Spain to testify, but circumscribed his testimony to matters which would not be considered expert testimony. Duphily claims that the testimony by Spain as to the appropriate height of the electrical wires ran afoul of the court's restriction.

■ It is well established that the testimony of a witness who possesses expertise in a certain area is not *ipso facto* expert testimony. *See McLain v. General Motors Corp.,* Del.Supr., 569 A.2d 579, 584 (1990). A distinction is drawn between testimony based upon one's personal knowledge of the facts of the case, and testimony by a witness, who has been properly qualified as an expert, in the form of "an opinion or otherwise" concerning a subject area relevant to the case. *Id.* (comparing D.R.E. 602 and D.R.E. 702). In short, a witness may testify as to his or her own experience, knowledge and observation about the *facts of the case* without giving "expert testimony" as defined in the rules of evidence. *Id.*

In this case, Spain testified that the clearance of the higher-most phase wire which Duphily grabbed complied with the policies and practices of Delaware Electric. Unquestionably, this testimony was based upon

---

**10.** Delaware Electric apparently elected not to call the witness who was identified in the pre-trial order as its expert witness.

Spain's experience and personal knowledge of the policies of his employer and was non-expert in nature. However, Spain also testified that, based upon his interpretation of the NESC, the appropriate height for the higher-most phase wire was 18.7 feet. In contrast to his testimony from his personal experience, knowledge or observation about the facts of the case, Spain thus rendered an "*opinion*" based upon his interpretation of the NESC. *See McLain,* 569 A.2d at 584. The rendering of such expert testimony required that Spain be designated as such in pre-trial discovery and appropriately qualified at trial. *See Stafford v. Sears, Roebuck & Co.,* Del.Supr., 413 A.2d 1238, 1245 (1980).

## VII

 Duphily next claims that Delaware Electric should not have been permitted to argue at trial that Duphily violated OSHA regulations. The parties are in disagreement whether the violation of an OSHA safety regulation may be used as evidence of contributory negligence in an action by an employee against a third-party tortfeasor. Although it is unclear from the record as to the precise positions of the parties asserted at trial, we make the following rulings for purposes of any retrial. Initially, we hold that, as a general matter, a party's violation of an OSHA safety regulation may be used as evidence of that party's negligence. *See Muzzleman v. National Rail Passenger Corp.,* D.Del., 839 F.Supp. 1094, 1098 (1993); *Carroll v. Getty Oil Co.,* D.Del., 498 F.Supp. 409, 413 (1980); *Rabar v. E.I. DuPont de Nemours & Co.,* Del.Super., 415 A.2d 499, 503 (1980). In addition, we hold that an *employee's* violation of an OSHA safety regulation may be used as evidence of his or her contributory negligence, *see, e.g., Cappellini v. McCabe Powers Body Co.,* 2nd Cir., 713

F.2d 1, 4–5 (1983), *provided* that the party asserting such negligence makes a sufficient showing that the employee was instructed upon or otherwise made aware of the particular OSHA regulation. Once such knowledge is shown, the court may instruct the jury that, if it finds that the employee in fact violated the OSHA regulation, the jury is permitted, but not required, to find the employee contributorily negligent. Similarly, counsel may argue that the employee was contributorily negligent by failing to follow OSHA regulations once the court has indicated its intention to instruct on the significance of such evidence.

## VIII

 Finally, Duphily claims that the court erred in denying his motion for a directed verdict. *See* Super.Ct.Civ.R. 50. Whether the court erred in denying a motion for a directed verdict for the plaintiff depends upon whether, under any reasonable view of the evidence, the jury could have found for the defendant. *Parks v. Ziegler,* Del.Supr., 221 A.2d 510 (1966). As previously noted, Delaware Electric presented sufficient evidence at trial for the issue of superseding cause to go to the jury. Therefore, we find this claim without merit.

For the reasons stated, the judgment of the Superior Court is REVERSED and the matter REMANDED for further proceedings consistent with this opinion.