**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| CHARLES CHAMBERS and SARAH CHAMBERS, his wife, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. N18C-06-226 EMD ) |
| CANAL ATHLETIC ASSOCIATION INCORPORATED, and DIAMOND STATE POLE BUILDINGS, LLC, | ) ) ) ) ) |
| Defendant. | ) ) ) ) |

Submitted: October 11, 2021
Decided: January 11, 2022

*Upon Defendant Diamond State Pole Building's Motion for Summary Judgment*
***GRANTED***

Philip T. Edwards, Esquire, Murphy & Landon, Wilmington, Delaware, Samuel I. Reich, Esquire, Laffey, Bucci & Kent, LLP, Philadelphia, Pennsylvania; *Attorneys for Plaintiffs Charles Chambers and Sarah Chambers.*

Matthew P. Donelson, Esquire, Kent & McBride, P.C., Wilmington, Delaware; *Attorney for Defendant Diamond State Pole Buildings, LLC.*

Thomas J. Gerard, Esquire, Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware; *Attorney for Defendant Canal Athletic Association Incorporated.*

**DAVIS, J.**

## I.      INTRODUCTION

This is a civil negligence action.  On June 29, 2018, Plaintiffs Charles Chambers and

Sarah Chambers (collectively, "Plaintiffs") commenced this action with the filing of a complaint

(the "Complaint") against Defendant Canal Athletic Association Incorporated ("Canal").[1]  Canal

---

[1] D.I. No. 1.

1

answered the Complaint on September 26, 2018.[2]  Subsequently, Plaintiffs obtained leave to file an amended complaint (the "Amended Complaint").[3]  On February 6, 2019, Plaintiffs filed the Amended Complaint that added Defendant Diamond State Pole Buildings, LLC ("Diamond State") as an additional defendant.[4]  Through the Amended Complaint, Plaintiffs seek damages for physical injuries, medical expenses, lost wages, and loss of consortium.  Diamond State filed its Answer with Affirmative Defenses and Cross-Claims on April 26, 2019.[5]

Diamond State moved for summary judgment (the "Motion") on June 25, 2021, arguing that Plaintiffs have failed to meet their prima facie case for negligence under Delaware law.[6]  Plaintiffs responded in opposition to the Motion on July 23, 2021.[7]  Diamond State then filed its Reply on August 6, 2021.[8]  The Court held a hearing on the Motion on October 11, 2021.[9]  At the conclusion of the hearing, the Court took the Motion under advisement.

For the reasons set forth below, the Court **GRANTS** the Motion.

## II.    RELEVANT FACTS

Plaintiffs' claims arise out of an accident that occurred on April 8, 2017.[10]  Plaintiffs were volunteering at the Canal Little League facility when Mr. Chambers was allegedly struck in the head by a concession stand window.[11]  Mr. Chambers alleges that he sustained closed head injuries that interfere with his ability to function, think, and concentrate.[12]

---

[2] D.I. No. 6.
[3] D.I. No. 16.
[4] D.I. No. 19.
[5] D.I. No. 33.
[6] D.I. No. 133.
[7] D.I. No. 134.
[8] D.I. No. 135.
[9] D.I. No. 139.
[10] Am. Compl. ¶ 8.
[11] *Id.*
[12] The details of Mr. Chambers injuries are not discussed in detail in either the amended complaint nor in the fact sections of the present Motion, Opposition, or Reply. These facts are taken from Defendant's January 29, 2020, Motion to Dismiss or in the Alternative for Sanctions Against Plaintiffs.

Plaintiffs contend that the concession stand window did not have a proper locking/latching mechanism to keep the window open safely.[13] Canal owns and operates two concession stands, one for the baseball fields and one for the softball fields, the concession stand in question was the one for the softball fields.[14]

Diamond State manufactured and sold the concession stand to Canal.[15] Dave Mason, who owns Diamond State, testified that Trinidad Navarro[16] approached Diamond State to build the concession stand at issue.[17] On February 24, 2014, Canal contracted with Diamond State to construct a concession stand at the Canal Little League facility.[18] Canal provided Diamond State with a sketch of the concession stand, subject to approval by the Canal's board.[19]

The contract was for the construction of a 20x20x10 Residential Post Frame Building, with one insulated steel door with painted aluminum jamb and provided for the installation of two 41x64 concession windows/doors.[20] The contract does not contain any provisions regarding locking or latching mechanisms for the concession stand windows.[21] The contract states that the customer was responsible for obtaining the building permit.[22]

Diamond State and Canal discussed multiple options for the window and door of the concession stand.[23] Ultimately, Canal decided to make the concession stand window a chicken

---

[13] Plaintiffs' Opposition to Diamond State Pole Building, LCC's Motion for Summary Judgment (hereinafter "Opp.") at 1.
[14] Defendant Diamond State Pole Building's Motion for Summary Judgment (hereinafter "Mot.") at 1.
[15] Opp. at 2.
[16] Mr. Navarro was a Board member for Canal and was at one time their Safety Officer. Mot. at 3.
[17] Mot., Ex. F (Deposition of Dave Mason) at 9-17.
[18] Mot., Ex. A.
[19] Opp., Ex. 2 (Deposition of Trinidad Navarro) at 17-19.
[20] Mot., Ex. A.
[21] *Id.*
[22] *Id.*
[23] Mot., Ex. B (Deposition of Christopher Tazelaar) at 15, 22; Opp., Ex. 2 (Deposition of Trinidad Navarro) at 25-26.

3

coop style door[24] because it was an inexpensive option that was lightweight and the appropriate dimensions.[25]

When the concession stand first opened, a "wooden dowel" was used to hold open the concession window.[26] This mechanism was not "working well" so it was later modified.[27] Michael DeCampli was a volunteer and served on Canal's board when the concession stand was constructed.[28] Mr. DeCampli believed the latching system was modified sometime within a year after it was constructed.[29] On April 4, 2014, New Castle County officials gave Canal a certificate of occupancy.[30]

Christopher Tazelaar negotiated the contract on behalf of Diamond State.[31] Mr. Tazelaar testified that securing the concession window was "strictly up to [Canal]. They understood that and said that they would handle that portion of it."[32] Mr. Mason stated that Diamond State was not responsible for any of the interior, including the installation of any device to hold the window open.[33] When the concession stand was delivered and built, there was no latching mechanism for the window.[34]

Mr. DeCampli testified that, while he was serving on the Canal's board, the only complaints he received regarding the concession window were with the concern that it could be pushed open from the exterior.[35] Brian Bamber and Elizabeth Bilinsky were both volunteers at

---

[24] According to the testimony of volunteer Brian Bamber the door weighed approximately twenty pounds. Mot., Ex. D (Deposition of Brian Bamber) at 25.
[25] Opp., Ex. 2 (Deposition of Trinidad Navarro) at 26.
[26] *Id.* at 27-28.
[27] *Id.* at 28.
[28] Mot. at 2.
[29] Mot., Ex. C (Deposition of Michael DeCampli) at 10-11.
[30] Mot., Ex. G (Certificate of Occupancy).
[31] Mot., Ex. F (Deposition of Dave Mason) at 9.
[32] Mot., Ex. B (Deposition of Christopher Tazelaar) at 10-11.
[33] Mot., Ex. F (Deposition of Dave Mason) at 16-17.
[34] Opp., Ex. 2 (Deposition of Trinidad Navarro) at 27-28.
[35] Mot., Ex. C (Deposition of Michael DeCampli) at 13-14, 17-19.

Canal.[36]  Mr. Bamber and Ms. Bilinsky each testified in depositions that prior to April 8, 2017, there were no accidents involving the concession stand window.[37]

### III.    PARTIES' CONTENTIONS

#### A. MOTION

Diamond State alleges that Plaintiffs have failed to establish a *prima facie* negligence case under Delaware law.  Specifically, Diamond State argues that Plaintiffs have failed to demonstrate how Diamond State proximately caused Plaintiffs' harm and resultant injuries.  Further, Diamond State contends that even if it had provided a latch on the concession stand window, Canal's subsequent installation of a latch after Diamond State's manufacture and sale, cuts off Diamond State's liability.

#### B. OPPOSITION

Plaintiffs oppose the Motion.  First, Plaintiffs claim that Diamond State sold a defective concession stand which was in violation of New Castle County building code.  Second, Plaintiffs argue that it was foreseeable that an unsophisticated buyer would design and install an unsafe latching mechanism.  As such, Diamond State should have taken steps to ensure that the concession stand had a latching mechanism that would allow the concession stand window to be secured open in a safe fashion.  Plaintiffs conclude that Diamond State's failure to provide a latch when it knew that concessions were to be sold out of the concession stand window constituted negligence.[38]

---

[36] Mot. at 2-3.
[37] Mot., Ex. D (Deposition of Brian Bamber) at 20-22; Mot., Ex. E (Deposition of Elizabeth Bilinsky) at 11-12.
[38] Opp. at 1-2.

5

## IV. STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[39] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[40] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[41] The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[42] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[43]

## V. DISCUSSION

The principal question here is whether Plaintiffs have met their burden of establishing a *prima facie* negligence case. "In order to prevail in a negligence action, a plaintiff must show, by a preponderance of the evidence, that a defendant's negligent act or omission breached a duty of care owed to plaintiff in a way that proximately caused the plaintiff injury."[44]

---

[39] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[40] *Id.*
[41] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").
[42] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).
[43] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).
[44] *Brown v. F.W. Baird, LLC*, 956 A.2d 642 (Table), 2008 WL 324661, *2 (Del. 2008) (quoting *Duphily v. Del. Elec. Co-op. Inc.*, 662 A.2d 821, 828 (Del. 1995)).

## A. DIAMOND STATE DID NOT OWE PLAINTIFFS A LEGAL DUTY

"Duty is measured in terms of reasonableness and is equated to the conduct of a reasonably prudent person under the circumstances."[45] Whether a defendant is "under a legal obligation–a duty–to protect the plaintiff from the risk of harm which caused his injuries . . . is entirely a question of law" for the Court to determine.[46] "Ordinarily, questions of negligence are not decided on motions for summary judgment but are left for the trier of fact. However, if there is a complete failure of proof concerning an essential element of the plaintiff's case and the uncontroverted facts compel only one conclusion, then summary judgment is warranted."[47]

The facts in this case are like the facts in *McLaughlin v. Dover Downs, Inc.*, where the Court granted a motion for summary judgment in favor of the defendant manufacturer— "Horton."[48] The plaintiff suffered serious permanent injuries because of an accident which occurred while he was exiting through an automatic revolving door at the Dover Downs Hotel and Casino.[49] Horton designed, manufactured, and sold the revolving door in question. While the door had multiple safety features making it appropriate for its use in a hotel setting, it did not have all the safety features available at the time.[50] The Court explained that under Delaware law:

> [a] manufacturer has a duty to use reasonable care, skill, and diligence in designing its product so as to minimize all foreseeable risks. A manufacturer must reasonably anticipate the environment in which the product is normally used and must design the product to minimize foreseeable risks of harm that may result from using the product in such an environment. Although a manufacturer has a duty to exercise reasonable care, the manufacturer is not required to design a product that is foolproof or incapable of producing injury.[51]

---

[45] *McLaughlin v. Dover Downs, Inc.*, 2008 WL 2943392, *12 (Del. Super. July 17, 2008).
[46] *Fritz v. Yeager*, 790 A.2d 469, 471 (Del. 2002) (citing *Bryant v. Delmarva Power & Light Co.*, 1995 WL 653987, *2 (Del. Super. Oct. 2, 1995)).
[47] *McLaughlin*, 2008 WL 2943392 at *12.
[48] *See id.*
[49] *Id.* at *1.
[50] *Id.* at *3-*5.
[51] *McLaughlin*, 2008 WL 2943392 at *13. *See also Brower v. Metal Industries, Inc.*, 719 A.2d 941, 945 (Del. 1998) ("[T]he purpose of making the finding of a legal duty as a prerequisite to a finding of negligence, or a breach of

7

In granting Horton's motion for summary judgment, the Court noted that "it is not enough for a plaintiff to establish that a product might have been made safer."[52]

Here, Plaintiffs argue that by manufacturing the concession stand without a latch, Diamond State made a defective product.[53] Plaintiffs rely on a series of products liability cases relating to design and manufacturing defects to support their position that if a code compliant latch had been included with the concession stand, Canal would not have "design[ed] and manufacture[d] a latch."[54] Further, Plaintiffs argue that Diamond State knew the intended use of the concession stand window and did not provide a latching mechanism therefore forcing Canal to "fix the defect."[55] However, Plaintiffs fail to establish any facts that would lead a trier of fact to find that the concession stand Diamond State provided was defective in any way. Plaintiffs do not point to any caselaw which would extend a manufacturers duty to include components they did not design, produce, or install. As in *McLaughlin*, it is insufficient for Plaintiffs to establish negligence by arguing that providing a latch would have made the concession stand safer.[56]

Both Plaintiffs and Diamond State cite caselaw addressing the relevant legal obligations with respect to duty of care. However, the Court notes that the parties do not discuss the scope of the duty owed by Diamond State. The only relationship between Plaintiffs and Diamond State is with respect to Diamond State's role in manufacturing and building the concession stand for Canal. The building of the concession stand was performed in compliance with the contract between Diamond State and Canal and in compliance with basic building safety requirements.[57]

---

implied warranty, in products liability is to avoid the extension of liability for every conceivably foreseeable accident, without regard to common sense or good policy.").

[52] *Id.* at *15.
[53] Opp. at 2.
[54] *Id.* at 9.
[55] *Id.* at 7.
[56] *See McLaughlin*, 2008 WL 2943392 at *15.
[57] *See* Mot., Ex. A; Mot., Ex. G (Certificate of Occupancy).

Under the terms of the contract between Diamond State and Canal, Diamond State was responsible for the construction of a 20x20x10 Residential Post Frame Building, with one insulated steel door with painted aluminum jamb and two 41x64 concession windows/doors provided and installed.[58] Essentially, Diamond State was to build "a shell, four walls . . . concrete slab, and [] the two windows and [] a door."[59] The contract does not contain any provisions regarding locking or latching mechanisms for the windows and it specifically notes that the permit is to be pulled by the customer.[60] Canal and Diamond State understood that Diamond State did not have any obligation or responsibility for providing a latching mechanism.[61] Plaintiffs argue that providing the concession stand without a latching mechanism for the window constitutes negligence but fail to provide any evidence beyond conclusory allegations.

Plaintiffs argue that Diamond State's failure to design or manufacture the concession stand window with a latching mechanism violated "the New Castle County enforced building Code (IBC 2006)."[62] However, Plaintiffs' expert takes the code in question out of context and applies it unreasonably in this case. Plaintiffs' expert asserts that the delivery of the concession stand without a restraining mechanism violated local building code.[63] Plaintiffs' expert states that "[t]he delivery of the incident concession building without a means to secure the concession door in the open position presented a condition of potential injury . . ." which constitutes "a violation of the enforced New Castle County building code."[64]

---

[58] Mot., Ex. A.
[59] Mot., Ex. B (Deposition of Christopher Tazelaar) at 11.
[60] Mot., Ex. A.
[61] *Id.*
[62] Opp. at 8 (citing Opp., Ex. 1).
[63] *See id.* (citing Ex. 1 (Investigative Report of Brian L. Mills)).
[64] *Id.* at 19.

Essentially, Plaintiffs' expert alleges that any unsafe building is a violation of the New Castle County building code and that Diamond State's failure to provide a latch for the window made the building unsafe. Plaintiffs' expert ignores relevant information in reaching his conclusion. For instance, the expert report cites the New Castle County Property Maintenance Code Section 301.2 which states that the owner is responsible for maintaining the premises in compliance with the code.[65] Additionally, Plaintiffs do not address the fact that the contract between Diamond State and Canal specifically charges Canal with the responsibility of obtaining proper permitting.[66] Further, Plaintiffs disregard that New Castle County granted a certificate of occupancy for the concession stand after the initial latching mechanism was installed by Canal. The certificate states that the structure was inspected for compliance with applicable codes.[67]

The Court finds it unreasonable to accept Plaintiffs' contention that Diamond State's failure to provide a latching mechanism for the concession window was negligent when: (i) the parties did not contract for a latching mechanism and (ii) no evidence has been presented that a latching mechanism was a necessary safety feature.

Plaintiffs allege that Diamond State's failure to include a mechanism to secure the concession window in the open position proximately caused Mr. Chamber's injuries. Diamond State argues that even if they had provided a latch, Canal's subsequent installation of the present latch would be a superseding, intervening act that would negate any alleged tortious conduct by Diamond State.[68] The Court also agrees with Diamond State's "intervening and superseding" cause argument on proximate cause.

---

[65] *Id.* at 6.
[66] Mot., Ex. A.
[67] Mot., Ex. G (Certificate of Occupancy).
[68] Mot. at 8.

The Court concludes that, as a matter of law, Diamond State had no duty to prevent the concession window from falling on Mr. Chambers, therefore it is not necessary to consider breach of duty or causation. In the absence of a legal duty, Plaintiffs' other arguments are without the necessary predicate foundation. "A legal duty must be established before consideration can be given to breach of duty or proximate causation."[69]

## B. PLAINTIFFS HAVE FAILED TO ESTABLISH CAUSATION

To establish the prima face case for negligence, Plaintiffs must establish that Diamond State's action caused Plaintiffs' injury.[70] While this is generally a question of fact for a jury, it need not be "where there can be no reasonable difference of opinions as to the conclusion to be reached on the question of whether an intervening cause is abnormal, unforeseeable, or extraordinarily negligent, should the question be determined by the Court as a matter of law."[71]

Here, Plaintiffs' contention as to the cause of their injuries fail as a matter of law. Diamond State is not liable for the alleged faultiness of a device it did not manufacturer, install, or sell. The facts do not provide sufficient evidence to demonstrate that it was reasonably foreseeable that Diamond State's failure to provide a latch proximately caused Plaintiffs' injuries.

The contract between Diamond State and Canal provided that the stand would be delivered without a window latching mechanism. Plaintiffs allege that the injuries sustained by Mr. Chambers were caused by a purported failure of a subsequently installed latching mechanism. Therefore, Mr. Chambers alleged injuries were not proximately caused by Diamond

---

[69] *Brower*, 719 A.2d at 943.
[70] *RBC Cap. Mkts, LLC v. Jervis*, 129 A.3d 816, 864 (Del. 2015).
[71] *Duphily*, 662 A.2d at 831 (citing *Vadala v. Henkels & McCoy, Inc.*, 397 A.2d 1381, 1383 (Del. 1979)).

State.  Plaintiffs have not claimed (nor could they) that the concession stand was inherently dangerous as delivered by Diamond State.

This Court finds that, under the facts here, Diamond State cannot be liable for the subsequent installation of a device by a third party—Canal—when the subsequent installation was not considered in the contract.  Further, the Court finds that Plaintiffs have not demonstrated that installation of a latching device was a necessary safety feature or the industry standard.  As Plaintiffs cannot satisfy causation, Plaintiffs cannot establish their *prima face* case for negligence.

## VI.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Diamond State Pole Building's Motion for Summary Judgment.

**IT IS SO ORDERED**

Dated: January 11, 2022
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc:     File&ServeExpress

12