# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TANA STEVENS, DWAYNE STEVENS, and ROBERT WILSON, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. N18C-11-001 JRJ |
| | ) ) | **CONSOLIDATED** |
| | ) | |
| ESTATE OF LYNNIE DALIOUS, ROBERT W. WILSON, JR., SAMUEL THOMAS, FLY RIGHT TRUCKING, LLC, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, CHARLES RUSSUM, PATRICIA COHEN, and US TRAILER HOLDINGS, LLC, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| SAMUEL THOMAS and FLY RIGHT, LLC, | ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| TANA STEVENS and ESTATE OF LYNNIE DALIOUS, | ) ) ) | |
| Third-Party Defendants. | ) | |

Date Submitted:  February 26, 2021
Date Decided:  May 13, 2021

**MEMORANDUM OPINION**
*Upon Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment*:  **GRANTED IN PART AND DENIED IN PART**.

Kenneth M. Doss, Esquire, Daniella C. Spitelli, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., 1007 N. Orange Street, Suite 1100, Wilmington, DE 19899, Attorneys for Defendant State Farm Mutual Automobile Insurance Company.

Robert C. Collins, II, Esquire, Schwartz & Schwartz, P.A., 1140 South State Street Dover, DE 19901, Attorney for Plaintiffs Tana Stevens and Dwayne Stevens.

**Jurden, P.J.**

# I.    INTRODUCTION

These consolidated cases arise out of two separate traffic accidents.[1]  One occurred on November 1, 2016, and the other occurred on December 27, 2017. Plaintiff Tana Stevens was involved in both accidents.  She suffered various injuries in connection with the 2016 accident.  She claims that those injuries were exacerbated by the 2017 accident—an accident that involved a "phantom vehicle." After the 2017 accident, Stevens filed uninsured and underinsured motorist claims against her automobile insurance carrier, Defendant State Farm Automobile Insurance Company ("State Farm").  Seeking to dismiss these claims, State Farm filed the instant Motion for Summary Judgment.  For the reasons explained below, State Farm's Motion is **GRANTED IN PART AND DENIED IN PART**.

# II.    BACKGROUND

## A.    Factual Background

On November 1, 2016, Stevens was involved in a motor vehicle accident.[2] The accident itself is irrelevant here, but it is important to note that Stevens suffered various injuries to her neck and back as a result of the accident.[3]

---

[1] *See generally Stevens v. Dalious*, C.A. No. K17C-07-028 KEP; *Stevens v. Russum*, C.A. No. K18C-10-008 JJC.

[2] *See* Letter from Kennedy Yalamanchili, M.D., F.A.C.S., Defendant State Farm Automobile Insurance Company's, as Plaintiff's Insurer for Her December 27, 2017 Accident, Motion for Summary Judgment ("Opening Brief") (Ex. E) (Trans. ID. 66261687).

[3] *Id.*

According to Stevens, on December 27, 2017, she was heading northbound in the left lane of Bay Road.[4] A blue sedan (or "phantom vehicle") was in front of Stevens in the left lane.[5] Defendant Charles Russum, also in the left lane, was trailing Stevens.[6] Stevens was approaching the intersection of Bay Road and Bowers Beach Road, where there is a traffic light.[7] As she neared the intersection, she could see that the traffic light was red.[8] She could also see that the blue sedan had already come to a complete stop at the traffic light.[9]

When the traffic light changed from red to green, Stevens anticipated that the blue sedan would proceed, but it did not do so.[10] To avoid colliding with it, Stevens either came to a complete stop[11] or simply slowed down enough to avoid a collision;[12] regardless, she did not make contact with the blue sedan.[13] At the same time, however, Russum approached from the rear and collided with Stevens.[14] The blue sedan then sped away.[15]

---

[4] Compl., Opening Brief (Ex. A), at ¶ 6 (Trans. ID. 66261687); Dep. of Tana Stevens, Opening Brief (Ex. B), at 21:11–19 (Trans. ID. 66261687).

[5] Dep. of Tana Stevens, Opening Brief (Ex. B), at 15:12–24.

[6] *See* Compl., Opening Brief (Ex. A), at ¶ 7.b.

[7] Dep. of Tana Stevens, Opening Brief (Ex. B), at 21:11–19.

[8] *Id.* at 15:12–24.

[9] *Id.* at 15:3–5.

[10] *Id.* at 26:15–21.

[11] *See id.* at 16:19–21; *id* at 48:1–4.

[12] *Id.* at 15:5–7; *id.* at 47:4–5.

[13] *Id.* at 16:22–17:1.

[14] *Id.* at 5. In connection with this incident, Russum pled guilty to violating 21 *Del. C.* § 4123 (Following Too Closely). Russum Disposition Record, Opening Brief (Ex. C) (Trans. ID. 66261687).

[15] Dep. of Tana Stevens, Opening Brief (Ex. B), at 26:6–7.

In April 2018, Stevens visited Dr. Kennedy Yalamanchili and told him that she had begun experiencing (what Dr. Yalamanchili described as) an "immediate onset of cervical pain" after the 2017 accident.[16] Stevens also told Dr. Yalamanchili that she had begun experiencing pain in her right wrist, which she attributed to the 2017 accident.[17] Dr. Yalamanchili opined that "the accidents of November 1, 2016 and December 27, 2017 both caused [Stevens's] cervical problems, with the December 2017 trauma significantly aggravating the condition and rendering it the more painfully symptomatic, potentially leading to further intervention in the future."[18] In addition to these injuries, Stevens believes that she suffered new injuries in her "right thumb/hand" as a result of the 2017 accident.[19]

## B.    Procedural History

On October 4, 2018, Stevens and her husband, Dwayne Stevens,[20] filed a Complaint against (1) Russum, (2) Patricia Cohen,[21] and State Farm.[22] As against

---

[16] Letter from Kennedy Yalamanchili, M.D., F.A.C.S., Opening Brief (Ex. E) Trans. ID. 66261687).

[17] *Id.*

[18] *Id.*

[19] Plaintiffs' Answers to Defendants Charles Russum and Patricia Cohen's Interrogatories Directed to Plaintiffs, Opening Brief (Ex. D), at 18, 32. (Trans. ID. 66261687).

[20] Dwayne Stevens claims loss of consortium; he is otherwise uninvolved in this case. Compl., Opening Brief (Ex. A), at ¶¶ 2, 21.

[21] Cohen has been dismissed from this case by stipulation. *See generally* Order Granting Partial Stipulation of Dismissal Against Defendant Patricia Cohen (Trans. ID. 66237878).

[22] *See generally id.*

State Farm, the Complaint asserts an uninsured motorist claim and an underinsured motorist claim.[23]

As for the uninsured motorist claim, the Complaint alleges that Stevens's uninsured motorist coverage entitles her "to uninsured motorist benefits if she was injured due to the actions of an unidentified 'phantom' vehicle."[24] The Complaint also alleges that the individual and collective negligence of Russum, Cohen, and the phantom vehicle directly and proximately caused the 2017 accident.[25] Thus, the Complaint charges State Farm with responsibility "for damages attributable to the unknown blue sedan . . . as if it were that vehicle's insurer."[26]

As for the underinsured motorist claim, the Complaint alleges that, "[s]ubject to the underinsured motorist coverage's policy limit, [State Farm] is responsible for any damages attributed to [Russum and Cohen] to the extent those damages exceed all insurance policies covering [Russum and Cohen]."[27]

It is unnecessary to recount the entire procedural history that followed the filing of the Complaint. Suffice it to say that on January 15, 2021, State Farm filed

---

[23] Compl., Opening Brief (Ex. A), at ¶¶ 16–19.
[24] *Id.* at ¶ 16.
[25] *Id.* at ¶ 17.
[26] *Id.* at ¶ 18.
[27] *Id.* at ¶ 19.

the instant Motion for Summary Judgment seeking dismissal of Stevens's uninsured and underinsured motorist claims.[28]

## III. STANDARD OF REVIEW

Summary judgment is appropriate only if the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[29] "When the evidence shows no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to demonstrate that there are genuine issues of material fact that must be resolved at trial."[30] "All facts are viewed in a light most favorable to the non-moving party."[31] Still, the Court "will not indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[32]

## IV. DISCUSSION

### A. Uninsured Motorist Claim

---

[28] *See generally* Opening Brief. On February 19, 2021, Stevens filed her Responding Brief. Plaintiff Tana Stevens' Response in Opposition to Defendant State Farm Automobile Insurance Company's, as Plaintiff's Insurer for Her December 27, 2017, Accident, Motion for Summary Judgment ("Responding Brief") (Trans. ID. 66356324). And on February 26, 2021, State Farm filed its Reply Brief. Reply Brief of Defendant State Farm Mutual Automobile Insurance Company in Support of Its Motion for Summary Judgment ("Reply Brief") (Trans. ID. 66375694).

[29] Super. Ct. Civ. R. 56(c).

[30] *Tolliver v. U.S. Bank Nat'l Ass'n*, 2020 WL 2095830, at *1 (Del. Apr. 29, 2020) (internal quotation marks omitted) (quoting *Grabowski v. Mangler*, 938 A.2d 637, 641 (Del. 2007)).

[31] *Preston Hollow Capital LLC v. Nuveen LLC*, 2020 WL 7365808, at *4 (Del. Super. Ct. Dec. 15, 2020) (citing *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991)).

[32] *Brown v. City of Wilmington*, 2019 WL 141744, at *2 (Del. Super. Ct. Jan. 8, 2019) (internal quotation marks omitted) (quoting *In re Asbestos Litigation*, 509 A.2d 1116, 1118 (Del. Super. Ct. 1986)).

To prevail on her uninsured motorist claim, Stevens must show that the phantom vehicle was negligent.[33]   Specifically, Stevens must show by a preponderance of the evidence that the phantom vehicle breached a duty of care owed her and that the breach proximately caused her injury.[34]   State Farm attacks two of these elements, arguing that that the evidence does not support a finding that the phantom vehicle breached a duty of care or proximately caused Stevens's injuries.[35]

As for the element of breach, State Farm contends that the phantom vehicle committed no breach of duty by failing to immediately proceed through the green light.[36]   In fact, according to State Farm, there are a number of legal reasons why a vehicle might fail to do so:  "a health mishap, a mechanical issue, spilled coffee, unsafe circumstances existing outside of the vehicle, or an endless list of innocuous explanations."[37]   State Farm also notes that the record lacks direct evidence of the phantom vehicle's alleged negligence.[38]   For example, State Farm points to Stevens's deposition testimony, where she testified that she could not see in front of

---

[33] *See Evans v. Lattomus*, 2011 WL 664046, at *1 (Del. Super. Ct. Feb. 8, 2011).
[34] *See Johnson v. Magee*, 2007 WL 4248523, at *3 (Del. Super. Ct. Nov. 30, 2007) (internal quotation marks omitted) (quoting *Duphily v. Delaware Electric Cooperative, Inc.*, 662 A.2d 821, 828 (Del. 1995)).
[35] Opening Brief, at ¶ 5.
[36] *Id.* at ¶ 7.
[37] Reply Brief, at ¶ 3a.  State Farm's Reply Brief contains two Paragraph 3s, so the Court cites the first as ¶ 3a and the second as ¶ 3b.
[38] *See* Opening Brief, at ¶ 9.

the phantom vehicle or otherwise determine whether it had a good reason to remain stopped.[39] More generally, State Farm argues that Stevens's deposition testimony is filled with speculation.[40]

Stevens responds that the phantom vehicle breached "a duty to not stay stopped in the roadway unless there is a good reason to be stopped in the roadway."[41] Stevens notes that she testified as to her confusion about why the phantom vehicle did not drive through the green light.[42] She also asserts that she testified that "the driver of the phantom vehicle appear[ed] to have his/her head down, seeming distracted."[43] According to Stevens, she had a conversation with Russum after the phantom vehicle drove away during which Russum asked why the phantom vehicle had been stopped.[44] Ultimately, Stevens's position is that it is for the jury to determine whether the phantom vehicle remained at the green light for an appropriate time or for no good reason.[45]

As an initial matter, the Court notes that Stevens has provided no legal authority for her claim that the phantom vehicle was subject to a "duty to not stay

---

[39] Reply Brief, at ¶ 3a (citing Dep. of Tana Stevens, Reply Brief (Ex. H), at 27:12-28:2 (Trans. ID. 66375694)).

[40] *See id.* at ¶¶ 3b–4.

[41] Responding Brief, at ¶ 7.

[42] *Id.* (quoting Dep. of Tana Stevens, Responding Brief (Ex. A), at 26:15–21).

[43] *Id.* (citing Dep. of Tana Stevens, Responding Brief (Ex. A), at 22:9–23:1, 24:12–25:4, 26:15–21).

[44] *Id.* (quoting Dep. of Tana Stevens, Responding Brief (Ex. A), at 49:13–18).

[45] *Id.*

9

stopped in the roadway unless there is a good reason to be stopped in the roadway." Assuming for the sake of argument that this is the applicable duty, the evidence supporting its alleged breach is riddled with speculation. For example, in her deposition, Stevens testified, "*I'm not for sure*, but I *believe* that it was a carload of individuals who were texting."[46] Asked whether she actually saw the individuals texting, Stevens responded, "I saw their heads down so that's what I believe, *but I'm not -- I'm not for sure*."[47] Next, Stevens conceded that she could only partially see what was in front of the phantom vehicle, yet she denied the possibility that there could have been a temporary obstruction—such as an animal—in front of the vehicle.[48] Lastly, the statement that Russum is said to have made to Stevens is not direct evidence of what was occurring in or around the vehicle and, hence, is not evidence that the phantom vehicle was stopped for no "good reason."

---

[46] Dep. of Tana Stevens, Opening Brief (Ex. B), at 22:13–15 (emphasis added).

[47] *Id.* at 22:18–20 (emphasis added). Stevens's testimony is inconsistent with what she wrote in her brief—that it was "*the driver* of the phantom vehicle" who "appear[ed] to have his/her head down, seeming distracted." Responding Brief, at ¶ 7 (emphasis added).

[48] Dep. of Tana Stevens, Responding Brief (Ex. A), at 28:3–14 ("Q. Is it possible that something could have temporarily been there, and then they found it to be safe to move forward at that point, like, for instance, an animal running out into the road or something within their vehicle that was preventing them from moving forward? . . . A. Yes, and I would say that since they continued to drive away that there was nothing obstructing them."); *id.* at 28:18–29:1 ("Q. Is it possible that something had been in front of their vehicle, preventing them from moving forward, that was no longer there after they proceeded; for instance, an animal or something running out into the road that you may not have seen? A. I don't -- I don't know.").

Summary judgment is appropriate when there are no material facts in dispute.[49] Speculative evidence, however, cannot create a genuine issue of material fact.[50] Moreover, when trying to prove the negligence of a phantom vehicle, direct evidence becomes especially important. By definition, the driver of a phantom vehicle is unknown and necessarily unavailable to testify about the circumstances that existed in and around the vehicle.[51] Because Stevens has failed to point to any direct evidence of the phantom vehicle's negligence, she cannot state a claim for uninsured motorist benefits. Accordingly, the Court grants summary judgment in favor of State Farm as to Stevens's uninsured motorist claim.[52]

## B. Underinsured Motorist Claim

State Farm argues that Delaware law requires a claimant to exhaust any available liability insurance before the claimant's insurer is obligated to make a payment.[53] Here, State Farm notes that Russum has a $100,000 liability insurance

---

[49] *Coker v. Tenney-Andrews*, 2016 WL 6659500, at *2 (Del. Super. Ct. Nov. 10, 2016) (citation omitted).

[50] *Naughton v. GEM Ambulance, LLC*, 2021 WL 1694642, at *4 (Del. Super. Ct. Apr. 29, 2021) (citing *In re Asbestos Litig.*, 2007 WL 1651968, at *16 (Del. Super. Ct. May 31, 2007)); *see Brown v. City of Wilmington*, 2019 WL 141744, at *2 (Del. Super. Ct. Jan. 8, 2019) (quoting *In re Asbestos Litigation*, 509 A.2d 1116, 1118 (Del. Super. Ct. 1986)) ("On a motion for summary judgment, the Court 'will not indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible.'").

[51] *Hufford v. Moore*, 2007 WL 4577384, at *4 (Del. Super. Ct. Nov. 8, 2007) (quoting 18 *Del. C.* § 3902(3)(c)).

[52] *See Foraker v. Johnson*, 1987 WL 9601, at *3 (Del. Super. Ct. Apr. 13, 1987) (granting the defendant's motion for summary judgment because the plaintiff "failed to present any direct evidence" that the defendant negligently stopped his vehicle and, instead, relied upon the possibility and assumption of negligence).

[53] Opening Brief, at ¶ 10 (citing 18 *Del. C.* § 3902(b)(3)).

policy limit for Stevens to exhaust.[54] But she will not be able to do so, according to State Farm, because no reasonable jury could return a judgment in excess of $100,000 based on the injuries that Stevens suffered as a result of the 2017 accident.[55] State Farm notes that Stevens's damages evidence—records of medical expenses rendered after December 27, 2017—amount to medical expenses of only $5,054.[56]

Stevens responds that the jury must determine the amount of damages to which Stevens is entitled.[57] Stevens asserts that it is possible that a jury could render a judgment sufficiently large to trigger State Farm's obligation to pay underinsured motorist benefits.[58] And if State Farm believes that the evidence does not support the amount of the jury's judgment, Stevens argues, then State Farm may pursue remittitur.[59]

Pursuant to 18 *Del. C.* § 3902(b), an insurer, such as State Farm, is "not obligated pay any [underinsured motorist] benefits 'until after the limits of liability under all bodily injury bonds and insurance policies available to the insured at the

---

[54] *Id.* citing Russum's Answers to Form 30 Interrogatories, Opening Brief (Ex. G), at ¶ 6 (Trans. ID. 66261687)).
[55] *Id.*
[56] *Id.* (citing Consolidated Statement of Benefits, Opening Brief (Ex. F) (Trans. ID. 66261687)).
[57] Responding Brief, at ¶ 10.
[58] *Id.*
[59] *Id.*

time of the accident have been exhausted by payment of settlement or judgments.'"[60]

Stevens does not dispute that Russum's liability insurance policy limit is $100,000. Nor does Stevens dispute State Farm's assertion that the evidence of her medical expenses total $5,054 for services rendered after the 2017 accident. Thus, there is no genuine issue of material fact.

But that is only the first step of the summary judgment analysis. The second step is to determine whether the moving party has shown that it is entitled to judgment as a matter of law. Here, State Farm has provided no legal authority on that point. It merely asserts that no reasonable juror would return a verdict exceeding $100,000 based on the evidence presented. Accordingly, the Court denies State Farm's Motion for Summary Judgment as to Stevens's underinsured motorist claim.[61]

## V. CONCLUSION

In sum, the Court finds that Stevens's uninsured motorist claim is based on speculative evidence of the phantom vehicle's negligence. Accordingly, Court **GRANTS** State Farm's Motion for Summary Judgment as to that claim. As for Stevens's underinsured motorist claim, the Court finds that State Farm has not

---

[60] *Martin v. Nat'l Gen. Assur. Co.*, 2019 WL 2402927, at *2 (Del. June 5, 2019) (citing 18 *Del. C.* § 3902(b)(3)).

[61] This decision should cause State Farm no prejudice. As Stevens suggested, State Farm may seek remittitur should the jury return a judgment that it deems excessive in light of the evidence produced at trial.

established that it is entitled to judgment as a matter of law.  Accordingly, the Court

**DENIES** State Farm's Motion for Summary Judgment as to that claim.



      **IT IS SO ORDERED.**

*Jan R. Jurden*

Jan R. Jurden, President Judge

cc:  Prothonotary