**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| JAMES WILLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No: N23C-09-033 KMM |
| v. | ) |
| | ) |
| PHOENIX REHABILITATION AND | ) |
| HEALTH SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

Submitted: January 16, 2026
Decided: February 19, 2026

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

*Upon Phoenix Rehabilitation's Motion for Summary Judgment on Punitive Damages – GRANTED*

*Upon Willey's Motion for Summary Judgment on Phoenix Rehabilitation's fourth sixth, and eighth affirmative defense – GRANTED*

### A.   *Introduction*

Nearly four weeks after undergoing a microdiscectomy at L4-5, plaintiff James Willey ("Willey") sought the services of Phoenix Rehabilitation and Health Services, Inc. ("Phoenix Rehabilitation"), a physical therapy provider. At the time of his first appointment with Phoenix Rehabilitation, Willey was under a physician's restriction that cautioned against bending at the waist. Despite Willey informing Phoenix Rehabilitation of this restriction, during an initial evaluation the therapist

instructed Willey to bend. Willey did so and immediately felt a sharp pain. An MRI later revealed that the disk that required his first surgery had re-herniated, and as a result, Willey needed a second surgery.

Each party moved for summary judgment. Phoenix Rehabilitation seeks summary judgment on Willey's claim for punitive damages, asserting that there is no factual basis to submit the issue to a jury. Punitive damages are available when a defendant's conduct is willful or wanton, described as a "conscious indifference" to the rights of others. Here, the record does not support a finding that a reasonable jury might find willful or wanton conduct, accordingly Phoenix Rehabilitation's Motion is GRANTED.

Separately, Willey seeks summary judgment on three of Phoenix Rehabilitation's affirmative defenses. Phoenix Rehabilitation contests the dismissal of two.[1] At issue are the affirmative defenses of comparative negligence and superseding cause. Willey contends that Phoenix Rehabilitation failed to support these defenses with medical expert testimony and therefore, Phoenix Rehabilitation is barred from asserting them at trial. A defendant bears the burden of proving its affirmative defenses. Thus, to survive a motion for summary judgment, the defendant must point to admissible evidence in the record supporting the defense.

---

[1] Phoenix Rehabilitation does not contest Willey's motion as to the Sixth Affirmative defense (negligence by a third party), and therefore, the motion is GRANTED on that defense.

Phoenix Rehabilitation failed to proffer any expert testimony on plaintiff's alleged negligence or of a superseding cause, which is required for it to sustain its burden of proof. Accordingly, Willey's Motion is GRANTED.

**B.    *Background*[2]**

On August 23, 2021, Dr. Justin Tortolani ("Dr. Tortolani") performed a Right L4-L5 microdiscectomy on Willey to repair disk herniation. The surgery was largely a success. Shortly thereafter, Willey was diagnosed with Deep Vein Thrombosis ("DVT").[3]

On September 7, 2021, at Willey's post-op appointment, Dr. Tortolani "[r]ecommended that [Willey] continue to be mindful of waist bending and heavy lifting or twisting."[4] He was released to resume work the following week, with the caution to "avoid twisting especially at work" and a lifting restriction of 15 pounds.[5] Willey was also referred to physical therapy.[6] The physical therapy prescription reflects a referral for "Core stabilization, LE strengthening, modalities…Eval and treat."[7] It did not indicate any restrictions.

---

[2] The facts are derived from the undisputed facts in the pleadings and exhibits submitted by the parties. Citations in the form of [Name] Dep. refer to witness testimony from a deposition transcript submitted as an exhibit by the parties.
[3] D.I. 105, Ex. B at 1.
[4] *Id.* at 2; D.I. 102, Ex. A ("Tortolani Dep.") 18.
[5] D.I. 105, Ex. B.
[6] D.I. 105, Ex. D.
[7] *Id.*

On September 16, 2021, Willey presented to Phoenix Rehabilitation for an initial evaluation and treatment plan.[8] Dominick Policare, DPT ("Dr. Policare"), a Phoenix Rehabilitation physical therapist, conducted the initial evaluation.[9] Dr. Policare discussed with Willey his background, pain and discomfort levels, and his current activity level. This discussion led Dr. Policare to conclude that Willey presented with "pain and stiffness in the low back, tenderness to palpation, decreased [range of motion,]" an antalgic gait, and was relatively sedentary post-surgery.[10] Dr. Policare also discussed Willey's DVT with him.[11] Dr. Policare did not discuss any restrictions imposed by Dr. Tortolani. Willey did not provide Dr. Policare with the physical therapy prescription, documents relating to any restrictions, or any other papers relating to his surgery.[12]

In conducting the initial evaluation, Dr. Policare utilized the Axis Spine Protocol (the "Axis Protocol").[13] Phase 2 of the Axis Protocol applied because Willey was 3.5 weeks post-op,[14] the objective of which is to "re-establish neuromuscular recruitment…with dynamic lumbar stability exercise."[15] The Axis

---

[8] *See* D.I. 94, Ex. C ("Policare Dep.") 16, 30, 54.
[9] *Id.* at 52.
[10] *Id.* at 61–62.
[11] *Id.* at 62.
[12] *Id.* at 11, 52.
[13] *Id.* at 40.
[14] D.I. 94, Ex. B (Deposition of Willey's expert, Dr. Michelle Wolpov ("Wolpov Dep.") 30, Ex. D ("Axis Protocol").
[15] Axis Protocol at 2.

Protocol cautions physical therapists to "keep lumbar spine in neutral – avoid bending and twisting below the knees."[16]

Dr. Policare wanted to evaluate Willey's range of motion and "instructed [Willey] to bend forward [until it hurts] as if he was going to touch his toes."[17]  In response, Willey informed Dr. Policare "that's one of the things they told me – the words BLT may never have c[o]me out of my mouth, but I told him I was not supposed to bend, lift or twist."[18]  Dr. Policare repeated the instruction, stating he "just want[ed] to evaluate how [Willey was] moving," to get a sense of Willey's range of motion.[19]  Willey complied and bent forward.[20]  Upon bending forward, Willey felt immediate pain and reported it to Dr. Policare.[21]  After the appointment, Dr. Policare contacted Dr. Tortolani's office to discuss clearance to treat Willey given his DVT[22] (which he received), but he did not discuss any restrictions imposed by Dr. Tortolani.[23]

---

[16] *Id.*
[17] Policare Dep. 69; D.I. 102, Ex. C ("Willey Dep.") 47 ("[Dr. Policare] said bend over until it hurts").
[18] Willey Dep. 46.
[19] Policare Dep. 69.
[20] *Id.*
[21] Willey Dep. 49; *see also* Policare Dep. 69, 71.
[22] Policare Dep. 63.
[23] *Id.* at 64.

A September 17, 2021, MRI revealed that the same disk (L4-L5) herniated again.[24]  As a result, Willey underwent another surgery on September 27, 2021, eleven days after his appointment with Phoenix Rehabilitation.[25]

## C.    *Standard of review*

"The Court will grant summary judgment if 'there is no genuine issue as to any material fact and…the moving party is entitled to judgment as a matter of law.'"[26]  The moving party bears the initial burden of showing the absence of genuine issues of material fact.[27]  "If the moving party makes such a showing, 'the burden shifts to the non-moving party to demonstrate that there are material issues of fact.'"[28]  The Court must view the evidence and all reasonable inferences thereof in the light most favorable to the non-moving party.[29]  "'If the facts permit reasonable persons to draw but one inference, the question is ripe for summary judgment.'"[30]

---

[24] D.I. 94, Ex. G at 3.
[25] D.I. 94, Ex. E at 2.
[26] *Marcolini v. Horizon Servs., Inc.*, 2023 WL 111060, at * 2 (Del. Super. Jan. 5, 2023) (quoting Super. Ct. Civ. R. 56(c)).
[27] *Id.*
[28] *Davis v. Wayne Crosse*, 2023 WL 7140169, at *4 (Del. Super. Oct. 31, 2023) (quoting *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979)).
[29] *Id.*
[30] *Marcolini*, 2023 WL 111060, at * 2 (quoting *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995)).

**D.** *Analysis*

    **1.** ***Phoenix Rehabilitation is entitled to summary judgment on punitive damages.***

"Punitive damages in medical negligence cases are governed by 18 *Del. C.* § 6855 which states, 'punitive damages may be awarded only if it is found that the injury complained of was maliciously intended or was the result of willful or wanton misconduct by the health-care provider.'"[31] Willful or wanton conduct is conduct that reflects a "conscious indifference or I don't care attitude."[32] In other words, "[w]ithout 'evidence of *egregious* conduct of an intentional or reckless nature' in the record, a claim for punitive damages cannot survive."[33] And where the conduct "is based on an error of judgment…the plaintiff's burden is substantial. It must be shown that the precise harm which eventuated must have been reasonably apparent but consciously ignored in the formulation of the judgment."[34] Therefore, "[i]t is not enough that a decision be wrong. It must result from a conscious indifference to the decision's foreseeable effect."[35]

---

[31] *Milton v. Alfred I. DuPont Hosp. for Children*, 2025 WL 428070, at *4 (Del. Super. Feb 5, 2025) (quoting 18 *Del. C.* § 6855).
[32] *Porter v. Turner*, 954 A.2d 308, 312 (Del. 2008) (internal quotations marks omitted).
[33] *Marydale Pres. Assocs., LLC v. Leon N. Weiner & Assocs., Inc.*, 2022 WL 4446275, at *16 (Del. Super. Sept. 23, 2022) (quoting *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529 (Del. 1987)).
[34] *Jardel*, 523 A.2d at 531.
[35] *Id.* at 529.

Punitive damages serve to both "punish wrongdoers and deter others from similar conduct."[36] Because punitive damages implicate other societal policies, "[a]n award of punitive damages must therefore subsist on grounds other than making the plaintiff 'whole.'"[37] While "the question of punitive damages…is ordinarily for the trier of fact[,]"[38] "very high levels of inappropriate actions are required to warrant such a submission of punitive damages to a jury."[39] If the evidence viewed most favorably for the plaintiff does not permit a reasonable inference that defendant's conduct was sufficiently egregious to warrant an imposition of punitive damages, summary judgment in defendant's favor is appropriate.[40]

Willey argues that Dr. Policare's request to bend down as if he was going to touch his toes, despite Willey informing Dr. Policare of the bending restriction, constitutes conscious indifference.[41] Under Willey's view, Dr. Policare ignored a surgeon's order and substituted his own inferior judgment, thereby putting his patient's safety in jeopardy. Further, Dr. Policare knew, or should have known, this movement could easily re-injure Willey given his recent surgery.[42]

---

[36] *Id.*
[37] *Id.* at 528.
[38] *Davis*, 2023 WL 7140169, at *5 (internal citations and quotation marks omitted).
[39] *Vick v. Khan*, 2019 WL 2177114, at *8 (Del. Super. May 17, 2019) (quoting *Hartman v. Orthopaedic Assocs. of S. Delaware*, 2015 WL 995767, at *2 (Del. Super. Feb. 27, 2015)).
[40] *Davis*, 2023 WL 7140169, at *5.
[41] D.I. 102 ("Willey's AB") at 5.
[42] *Id.*

Willey largely relies on Dr. Tortolani's restrictions, which according to Willey, were "strict 'No BLT.'"[43]   Dr. Tortolani's expert report opines that Dr. Policare was "grossly negligent" because he "completed [*sic*] disregarded the restrictions and recommendations that we had provided to Mr. Willey and completed [*sic*] disregarded Mr. Willey's verbal explanation of what my physical therapy recommendations were."[44]  Willey testified that he told Dr. Policare he (Willey) was under a "no bending" order from Dr. Tortolani.  And, had Dr. Policare contacted Dr. Tortolani's office before the evaluation—just as Dr. Policare did when he sought clarity as to Willey's DVT—he would have known of the restriction.[45]

Even accepting the record in light most favorable to Willey, the facts do not support the position that Willey was under a "strict no BLT."  Dr. Tortolani's contemporaneous office notes reflect the recommendation that Willey "be mindful of bending."[46]

Willey also relies on the "hierarchy of orders," which means a physician's orders takes precedence over a physical therapists' protocols and the defense's reliance on the Axis Protocol fails for two reasons.  First, Dr. Policare used the Axis Protocol without Dr. Tortolani's consent.  Second, Dr. Policare violated the protocol,

[43] *Id.* at 2; *see also* Tortolani Dep. 18.
[44] D.I. 107, Ex. B at 3.
[45] Willey's AB at 5.
[46] D.I. 105, Ex. B at 2.

which required the spine be kept in a "neutral" position, which was violated when Willey "nose-dive[d]" to the floor. Willey relies on his expert Michelle Wolpov to support these arguments.

Willey's hierarchy of orders argument does not support a finding of conscious indifference because Willey was not under a strict no BLT, as he contends. Further, Dr. Tortolani testified that he does not provide guidelines for physical therapists' protocols, rather, he relies on the judgment of the therapist.[47]

Ms. Wolpov's testimony also does not support Willey's argument. She testified that it was reasonable for Dr. Policare to use the Axis Protocol.[48] Her opinions are based on the protocol's requirement of keeping the spine neutral. With respect to the remainder of the protocol's parameters (avoid bending and twisting below the knees), she testified that she is relying on the "more strict, the more precise restriction."[49]

Dr. Policare wanted to understand Willey's range of motion as part of an initial evaluation. He used an acceptable protocol. Accepting Willey's testimony, Dr. Policare asked Willey to bend "until it hurts," Willey responded that he is "not

---

[47] Tortolani Dep. 26, 65 (his opinions are based on the "*assumption* that a physical therapist is not going to as a patient to bend, lift, or twist following a microdiscectomy.") (emphasis added).
[48] Wolpov Dep. 94.
[49] *Id.* at 82. Willey also posits that Ms. Wolpov testified that the defense expert's calculation of the degree to which Willey bent shows that Dr. Policare violated the Axis Protocol. Willey misconstrues this testimony. In a series of leading questions by Willey's counsel, Ms. Wolpov merely confirmed that bending to the degree calculated by the defense expert failed to keep the spine neutral. *Id.* at 121.

10

supposed to bend, lift or twist."[50] When Willey started to bend, he did not get "very far."[51] Construing the facts in favor of Willey, the evidence does not raise a question of fact on whether Dr. Policare's conduct rose to the level of willful or wanton. Dr. Tortolani's recommendation was to "avoid" bending, but not a strict "no BLT." Ms. Wolpov opines that Dr. Policare violated the Axis Protocol with respect to keeping the spine neutral. Phoenix Rehabilitation submits its own expert who opines that Willey bent forward no more than 20-30 degrees, which is less than "avoid bending below the knees." Thus, there is a factual dispute as to the interpretation of the Axis Protocol and whether it was violated. That factual dispute does not, however, raise a question of whether Dr. Policare acted willfully or wantonly, in conscious disregard for Willey's safety.[52] Perhaps Dr. Policare's request was negligent (an error of judgment) —that is a question for a jury—but the evidence does not support a reasonable inference that Dr. Policare's conduct was "'sufficiently outrageous to warrant the imposition of punitive damages.'"[53]

Willey attempts to liken Dr. Policare's conduct to that of the defendant in *Strauss v. Briggs*.[54] That action stemmed from a misplaced surgical incision that

---

[50] Willey Dep. 46.
[51] *Id.* at 47.
[52] *Marcolini*, 2023 WL 111060, at *3 (rejecting the argument that a dispute of fact requires the issue of punitive damages go to the jury).
[53] *Id.* at *3 n.25 (quoting *Greenlee v. Imperial Homes Corp.*, 1994 WL 46556, at *9 (Del. Super. July 19, 1994)). That Willey's experts' reports opine that Dr. Policare was "grossly negligent" or "reckless" does nothing to meet Willey's burden here. Conclusory opinions are not sufficient.
[54] 525 A.2d 992 (Del. 1987); Willey's AB at 5–6.

11

damaged a nerve in the plaintiff's foot.[55] Plaintiff sought (and was awarded) punitive damages based on the theory that the doctor-defendant was so motivated by greed that he acted with reckless indifference.[56] The evidence established that the doctor-defendant submitted multiple fraudulent bills to plaintiff's insurer, started work at 9 a.m. and worked continuously until he operated on plaintiff at 1 a.m. the next day, and proposed to perform an operation which would only provide partial relief to plaintiff's symptoms, despite the fact that the doctor knew or should have known that a different operation (that he was unable to perform), was indicated.[57] The Delaware Supreme Court affirmed the award of punitive damages.[58]

*Strauss,* instructive on the type of conduct that warrants punitive damages, is factually distinguishable. Here, the disputed evidence does not tend to show that Dr. Policare approached Willey's treatment with reckless indifference or to serve some other ulterior motive.

Moreover, punitive damages would not advance any underlying policy (deterrence or punishment).[59] Phoenix Rehabilitation, and other physical therapy providers, are already disincentivized from performing physical therapy in a negligent manner. Injured patients not only may result in expensive litigation, "but

---

[55] *Strauss*, 525 A.2d at 994.
[56] *Id.* at 999.
[57] *Id.* at 999–1000.
[58] *Id.* at 994.
[59] *See Jardel*, 523 A.2d at 531.

it also damages the company's image and reputation."[60]  As explained above, this dispute is over an error of judgment and the record lacks any evidence rising to the level of conscious indifference.  Accordingly, Phoenix Rehabilitation's Motion is GRANTED.

### 2. *Willey is entitled to summary judgment on Phoenix Rehabilitation's fourth and eighth Affirmative Defenses.*

The fourth affirmative defense states, in relevant part, "[t]o the extent that it is found that any conduct on the part of [Phoenix Rehabilitation] cause[d] [Willey] damages, [Willey] was comparatively negligent in causing his injury and his damages should be reduced accordingly."[61]  The eighth affirmative defense states "[t]he injuries alleged by [Willey] were proximately caused by a superseding and/or intervening act, not caused by [Phoenix Rehabilitation]."[62]  Willey contends that Phoenix Rehabilitation failed to offer expert testimony to support either affirmative defense.[63]  Phoenix Rehabilitation responds that evidence exists in the record to support them.[64]

A defendant asserting an affirmative defense bears the burden of proving it.[65]  Where a medical expert opinion is required to prove negligence, the opinion

---

[60] *Marcolini*, 2023 WL 111060, at *3.
[61] D.I. 41 at 7.
[62] *Id.* at 8.
[63] *See generally* D.I. 95.
[64] D.I. 100 at 3.
[65] *Paragon Metal Holdings, LLC v. Smith*, 2025 WL 524265, at *10 (Del. Super. Jan. 28, 2025).

proffered must be to a reasonable degree of medical probability.[66] This standard applies to all elements, including causation.[67]

Phoenix Rehabilitation contends that if Willey was under a strict "no bending" order, then any activity which caused him to bend constitutes negligence or a superseding cause of Willey's alleged injuries.[68] For support, Phoenix Rehabilitation points to the opinions offered by Dr. Brian G. Leggin ("Dr. Leggin") and Dr. Scott A. Rushton ("Dr. Rushton"), the defense experts. Dr. Leggin opines that "[t]here are a multitude of factors that could have precipitated the recurrent disk herniation such as…positions the patient may have put himself into on his own such as sitting for extended periods, etc."[69] Dr. Rushton opined that

> functional activities of [] Willey following the index operative procedure during his recovery time including the ability to drive, enter and exit a vehicle, ambulate, get in and out of bed, in and out of a chair, on an off the commode, would have exceeded the physiological stress exhibited by the initial assessment of [Dr.] Policare.[70]

Phoenix Rehabilitation's arguments fail for two reasons. First, contrary to Phoenix Rehabilitation's position, expert testimony is required to support contributory negligence or superseding cause here. While Phoenix Rehabilitation is

---

[66] *Kardos v. Harrison*, 980 A.2d 1014, 1018 (Del. 2009).
[67] *Id.*
[68] D.I. 100 at 4 ("[Willey] got up and down out of a chair, got up and down to use a commode, got in an out of a car, and performed other activities of daily living. In addition, [Willey] reported to his provider on October 18, 2024, 'he just bent over to get something and had excruciating pain.'").
[69] *Id.*, Ex. H at 8.
[70] *Id.* at 5, Ex. I at 12.

not seeking to establish negligence by a medical provider, and therefore, 18 *Del. C.* § 6853(e) does not apply, where a question of negligence or a superseding cause is beyond the purvey of lay jurors, expert testimony is required.[71] A lay juror will not be able to determine whether any activities Willey engaged in could have contributed to the second herniation or whether another event was a superseding cause without the assistance of a medical expert.

Second, neither of the defense experts offer opinions on how or when Willey allegedly acted negligently or when the superseding cause[72] occurred after the initial alleged negligent act of Dr. Policare. Dr. Leggin offers opinions on activities that could have contributed to the second rupture, but he does not go as far to opine that Willey engaged in any of these activities negligently. Similarly, Dr. Rushton offers no opinion causally linking the recurrent herniation with any negligent actions taken by Willey. Furthermore, neither expert offers an opinion on any event *after* Dr. Policare's alleged negligence.[73]

---

[71] *Money v. Manville Corp. Asbestos Disease Comp. Trust Fund*, 565 A.2d 1372, 1377 (Del. 1991) ("When the issue of causation is presented in a context which is not a matter of common knowledge, such a reasonable probability can only be proven by the testimony of a competent expert witness.").

[72] *Duphily v. Del. Elec. Coop., Inc.*, 662 A.2d 821, 829 (Del. 1995) ("A superseding cause is a new and independent act, itself a proximate cause of an injury, which breaks the causal connection between the original tortious conduct and the injury.")

[73] *Id.* ("An intervening cause is one which comes into active operation in producing an injury *subsequent* to the negligence of the defendant.") (emphasis in original).

As Willey recognizes, Phoenix Rehabilitation may present evidence of certain risk factors and normal activities to explain why the re-herniation occurred, but there is no medical expert testimony to support the conclusion that Willey was negligent in performing such activities or that some event after his Phoenix Rehabilitation visit was a superseding cause. Therefore, Willey's motion is GRANTED.

**E.    *Conclusion***

Punitive damages are available only upon a showing of willful or wanton conduct. Thus, a showing of egregious conduct is a prerequisite to the submitting punitive damages to a jury. Dr. Policare's conduct, viewed in the light most favorable to Willey, does not rise to an egregious level. Accordingly, Phoenix Rehabilitation's Motion is **GRANTED**.

For an affirmative defense to survive summary judgment, the defendant must produce evidence of a genuine issue of material fact. A medical expert's opinion as to the negligence of Willey or of a superseding cause of his injuries is required, but none was provided. Therefore, Phoenix Rehabilitation has not produced evidence to survive summary judgment as to its fourth and eighth affirmative defense. Thus, Willey's Motion is **GRANTED**.

**IT IS SO ORDERED**.

*/s/Kathleen M. Miller*
Kathleen M. Miller, Judge

16